# Odum *v.* Rutledge & Julian Railroad Company.

*Statutory Proceeding for Condemnation of Right of Way by Railroad Company; Action for Breach of Submission to Arbitration.*

1. *Submission to arbitration of controversy as to right of way and damages.*—The submission to arbitration of a controversy between a

[Odum v. Rutledge & Julian Railroad Company.]

railroad company and the owner of land through which the railroad track is located, "concerning a right of way over the following lands," describing them, "and also the damages for such right of way to be paid to the said" owner, "agreeing to leave the determination of the location and the damages for the right of way to certain persons," and submitting to the persons named as arbitrators "the said controversy and the assessment of damages for said right of way," contemplates the acquisition by the railroad company of a mere easement in the lands through which its track is located, such as would be acquired by statutory proceedings for the condemnation of a right of way.

2. *Same; sufficiency of award.*—Under such a submission, an award assessing the damages to be paid to the owner, "for the right of way so taken, or to be taken according to the survey," at $500, and directing its payment within ten days, is in accordance with the submission, and is not void for uncertainty.

3. *Condemnation of right of way for railroad; what interest passes.* Under statutory proceedings condemning a right of way for a railroad, the railroad company acquires only an easement in the land for the uses and purposes stated in the application, while the fee remains in the owner, and also the right to the buildings and other improvements, though the railroad company may remove them as an obstruction of the right of way.

4. *Appeal.*—Under statutory provisions regulating proceedings for the condemnation of a right of way by a railroad company, as heretofore construed (*ante*, p. 443, and cases there cited), an appeal from the judgment rendered lies to the Circuit Court, but not to this court.

5. *Pleadings shown only by bill of exceptions.*—When no pleas are set out in the record proper, and the judgment-entry only recites that the trial was had on issue joined, the presumption will be indulged that the general issue only was pleaded, although the bill of exceptions states that the plea of set-off was interposed, and shows that an exception was reserved to a ruling founded on that plea.

5. *Performance of award; penalty or damages on non-performance.* Under a submission to arbitration of a controversy between a railroad company and the owner of land through which its track runs, as to the right of way and damages for it, with a stipulation for the payment of a specified sum as liquidated damages for non-performance by either party, the owner of the land is entitled to a reasonable time to examine a deed tendered for his signature, and is not in default if he refuses to sign a deed conveying more than the award authorizes.

6. *Set-off* is not available under the general issue, but must be specially pleaded.

7. *Tender.*—To constitute a valid tender, the money must be produced and proffered, unless the proffer is rendered unnecessary by the creditor's declaration that he will not accept it; and the tender must be kept up, to be available in defense of an action for the debt

APPEAL from the Probate Court of Crenshaw, before Hon. JOHN R. TYSON, special judge; and

APPEAL from the Circuit Court of Crenshaw, before Hon. JOHN P. HUBBARD.

These two cases, which were argued and submitted together, arose out of the following facts:

On the 29th March, 1890, an agreement to submit to arbitration a controversy which had arisen between them was

signed by the respective parties, in these words: " *Whereas* a controversy is now existing between Benjamin P. Odum and the Rutledge & Julian Railroad Company, concerning a right of way over the following lands belonging to said Odum," describing them, "and also the damages for such right of way to be paid to said Odum for locating said railroad and building the same on his said lands; now, therefore, we," the said parties, "desiring and hereby agreeing to leave the determination of the location and the damages for the right of way over said lands to certain persons, do hereby submit the said controversy and the assessment of damages for said right of way over said lands to the decision and arbitration of" six persons named; "and we do mutually agree that we will in all respects faithfully keep, observe and perform the decision and award which they, or a majority of them, may make in the premises, in writing under their hands, and delivered on or before March 29th, 1890. And it is further agreed, that if either party shall fail to keep, observe and perform such decision and award, he or it shall pay to the other party $250, as liquidated damages for such failure. Witness our hands," &c.

The arbitrators made their award on the 29th March, 1890, as follows: "We," naming themselves, "to whom as arbitrators were submitted certain matters in controversy existing between Benj. P. Odum and the Rutledge & Julian Railroad Company, as to what damages said railroad company shall pay to said Odum for the condemnation of a right of way for said railroad over and upon the lands of said Odum, as more fully appears by their written submission, dated," &c. "having been first duly sworn according to law, and having fully examined the matters in controversy by them submitted, by going in person over said right of way, and carefully considering the matter in all its bearings, do make and declare this our award in writing, as follows: We assess the damages due said Odum by said R. & J. Railroad Company, for the right of way so taken, or to be taken according to the survey," to be $500, and we award that said railroad company pay said Odum, as damages, said sum of $500. We further award that said railroad company give and allow to said Odum sufficient and good crossings over said right of way and railroad track, to said Odum's field or fields on the opposite side of the track from the house or settlement of said Odum; and we direct and award that said R. & J. Railroad Company, within ten days after notice and delivery of a copy of this award, pay to said Odum the sum of $500, with the cost of this arbitration. This in full of all matters submitted to us. Witness our hands and seals", &c.

A copy of this award having been delivered to the railroad

company on the 31st March. J. F. Walker, as its agent, accompanied with two witnesses, went to Odum's home on the next day, for the purpose of procuring his signature to a deed which had been prepared, and then paying him the $500 awarded to him as damages; but he declined to sign the deed, and the money was not paid to him, as hereinafter stated more particularly. On the 9th April, 1890, the railroad company instituted in the Circuit Court an action to recover the $250 stipulated in the submission to arbitration as liquidated damages; and having obtained a judgment on verdict, under the rulings of the court, the defendant brings the case to this court by appeal, on exceptions reserved. On the 14th April, 1890, the railroad company instituted statutory proceedings in the Probate Court to condemn a right of way through the defendant's lands; and having obtained a judgment of condemnation, the defendant brings the case to this court by appeal.

In the case in the Probate Court, Hon. B. A. WALKER being incompetent to sit, Hon. JOHN R. TYSON was selected as special judge. The defendant demurred to the petition of the railroad company, but his demurrer was overruled; and he then filed two special pleas, each setting up the submission and award as conclusive, and one of them further averring his readiness and willingness to perform and abide by the award, and his tender of a deed for the right of way, which the railroad company refused to accept. The court sustained a demurrer to each of these pleas, on the ground that the award was void; and issue being then joined between the parties, and submitted to a jury of six men, they returned a verdict assessing the defendant's damages at $212.50. During the trial, numerous exceptions were reserved by the defendant to the rulings of the court, and these rulings are, with the rulings on the pleadings, here assigned as error; but it is unnecessary to state them, since they are not considered by this court except as the same questions are presented in the other case.

In the case in the Circuit Court, to recover the penalty of $250 as liquidated damages for the defendant's alleged failure to perform the award, the record does not set out any pleas, and the judgment-entry only recites a trial on issue joined, after demurrer to the complaint overruled; but the bill of exceptions states that the defendant "pleaded (1) the general issue, and (2) set-off for the $500 awarded by the arbitrators, and $250 for liquidated damages on account of plaintiff's failure to comply with the award;" and that issue was joined on these pleas. On the trial, as the bill of exceptions shows, the plaintiff read in evidence the submission and award, and

.proved that a copy of the award was delivered to each of the parties on the 31st March; and further, that on the next day J. F. Walker, as agent of the railroad company, was sent to defendant, "carrying with him a right-of-way deed to the lands over which the right of way was to be acquired, and the $500 to be paid him as damages." Walker thus testified: "I told him that I had been sent over there to pay him the $500 awarded to him by the arbitrators for the right of way through his lands, and to get a deed for the same. He said, 'All right,' and invited us into the house. . . I proceeded to read the deed, and when I had finished reading it Mr. Odum remarked, 'I will not sign that deed, unless the railroad company will agree for me to remove my fences, houses, and other movable things and improvements on the right of way.' I then told him I was not prepared to say that he would be allowed this privilege, as I was only instructed to pay him the money and get his deed. He again refused to sign the deed, but said he would do so if the arbitrators said it was not their intention for him to have the improvements. I then told him I was only authorized to comply strictly with the written agreement of the arbitrators, and then read to him a notice from the railroad directors not to trespass on the right of way, nor remove therefrom any of the improvements."

"The defendant introduced evidence tending to show that he did not refuse to sign said deed, but said that he would sign it if plaintiff would allow him to move the rails, houses, and other improvements, and would sign it if the arbitrators said he should do so; that no money was offered or tendered to him, or shown to any one; that Walker only said he had the $500 to pay the damages assessed by the arbitrators; that plaintiff never afterwards offered to pay him any money at all, and he had never received any money at all from plaintiff for said right of way; and that on the 3d April, 1890, he notified plaintiff of his readiness and willingness to perform the award, and tendered for plaintiff's acceptance a deed conveying the right of way; that plaintiff refused to accept it, and refused to pay the $500." The defendant himself offered to testify, and to prove by several of the arbitrators, that the president of the railroad company told them, when entering on the discharge of their duties, "not to assess any damages for the rails, fences, houses, and other improvements on the right of way, as the railroad company did not want them;" and he excepted to the exclusion of this evidence. He also offered in evidence, as showing his readiness and willingness to perform, the two pleas which he had filed in the pending condemnation proceedings; and excepted to the exclusion of this evidence by the court.

[Odum v. Rutledge & Julian Railroad Company.]

The defendant requested numerous charges in writing, and duly excepted to their refusal, and among them the following: (1.) "There is no direction in the award that the defendant should make any deed to the railroad company; and if the offer to pay was coupled with the condition that he should sign the deed tendered to him, it was no tender of the $500 under the award." (2.) "Unless the defendant refused to accept the money, the plaintiff was not relieved from offering it." (4.) "Neither under the submission to arbitration, nor under the award, is it decided or directed that the defendant should make to the plaintiff any deed of conveyance; and if the deed was required as a condition for the payment of the $500, and no money was offered or tendered because Odum refused to sign the deed, this was without the submission or award, and gave plaintiff no right to recover the penalty sued for." (5.) "If the arbitration and award are valid for the purpose of conferring on the plaintiff the right to recover the $250 as liquidated damages, it is valid and confers on the defendant the right to claim the $500 awarded him as damages; and if the arbitration is thus valid, the defendant is entitled to recover said $500 under his plea of set-off; and if the jury find that his plea of set-off is made out, he is entitled to recover the excess of the set-off over the amount they may find the plaintiff entitled to recover, if anything."

The rulings on the pleadings and evidence, and the refusal of the several charges asked, are assigned as error.

GAMBLE & BRICKEN, for appellant.

PARKS & PARKS, and M. W. RUSHTON, contra.

COLEMAN, J.—These two cases were submitted as one case, and will be considered together.

The Rutledge & Julian Railroad Company and B. P. Odum agreed to submit to arbitration a matter of controversy in regard to a right of way over the lands of the latter. The articles of agreement, submitting the matter to arbitration, provided that, if "either party shall fail to keep, observe and perform the decision and award, he or it shall pay to the other party two hundred and fifty dollars as liquidated damages."

The railroad company, appellee, claimed that Odum forfeited the penalty, and instituted condemnation proceedings in the Probate Court, under the statute, to condemn the land to the right of way. From the trial and order of condemnation an appeal is taken to this court. The railroad corporation then sued upon the articles of submission, and recovered the amount

stipulated in the agreement. From the judgment rendered on this trial an appeal is taken from the Circuit Court.

Article I, section 24 of the Constitution, in regard to the exercise of the right of eminent domain, among other provisions declares as follows : "Nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, that the General Assembly may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved," &c.

Article 11, Title 2, Part 3 of the Code, commencing at section 3207, prescribes a system of condemnation proceedings in the Probate Court, when any corporation, person, or association of persons proposes to take lands, or to acquire an interest or easement therein, for any uses for which private property may be taken, to have the same condemned to such uses. Section 3216 of the Code provides, that the order of condemnation, upon the payment of the sum ascertained, shall vest in the applicant the easement proposed to be acquired, for the uses and purposes stated in the application, but for no other uses and purposes.

Construing the written agreement between B. A. Walker, president of the corporation railroad, and B. P. Odum, the owner of the land (in which the matter in dispute is stated to be "concerning a right of way" over the lands of the said Odum), in connection with the constitutional and statutory provisions, it is clear that no greater interest in the land was to be appropriated to the railroad than a mere easement. In fact, the agreement provides, "the determination of the location, and the damages for the right of way over said lands," should be left to the named arbitrators for decision. The fee of the land, and ownership of improvements thereon, and everything not incompatible with the use intended as a right of way, remained in the owner. Simply to acquire the right to use the land to the same extent, and no more, as if the right of way had been secured by compulsory proceedings under the statute, was the purpose of the arbitration.—*Ala. & Fla. R. R. Co. v. Burkett*, 42 Ala. 84 ; *Lance Appeal*, 55 Penn. St. 16 ; 93 Amer. Dec. 722, and note 729.

The railroad had the right to remove all buildings or constructions located upon its right of way, or which interfered with its use ; but the property interest in such building or improvement remained in the owner, subject to the right of the company to have them removed. The award rendered by the

[Odum v. Rutledge & Julian Railroad Company.]

arbitrators seems to be in accord with the matters submitted to them. It refers to the agreement of submission, assesses "the damages at five hundred dollars for the right of way so taken, or to be taken according to the survey." It appears from the evidence that the line for a right of way at that time had been surveyed, and the damages assessed were for the right of way "according to the survey." It is not void for uncertainty. *Id certum est quod reddi certum potest.* We do not doubt that Odum had the right to the buildings and the fences, and his claim to resume them ought not to have been refused or interfered with by the railroad company. ·

We are not considering the effect of the deed signed by Odum and wife and tendered to the company, but the right of the parties under the award. The demurrer to the pleas of the respondent in the *ad quod damnum* proceedings in the Probate Court ought not to have been sustained; and we would reverse and remand this case, if this court had jurisdiction of the case. We have held that, in *ad quod damnum* proceedings, no appeal lies from the Probate Court to the Supreme Court, but the appeal must be taken to the Circuit Court. *Postal Tel. Co. v. A. G. S. R. R. Co.*, 92 Ala. 331; 9 So. Rep. 555; *Woodward Iron Co. v. Cabaniss*, 87 Ala. 328; *Ala. Midland Railway Co. v. Newton, ante*, p. 443.

The pleas of the defendant in the appeal from the Circuit Court do not appear, except in the bill of exceptions. It is. not the office of a bill of exceptions to present the pleadings, and the rulings of the court thereon.—*Petty v. Dill*, 53 Ala. 641; *Ex parte Knight*, 61 Ala. 482. The record does show that "issue was joined," and thereupon came a jury, &c. The rule is that, when the record shows that the case was tried upon issue joined, but does not show what pleas were filed, it is presumed that the general issue was pleaded; and this is the only issue as presented in this record we are at liberty to regard as having been pleaded.—*May v. Sharp*, 49 Ala. 140; *Hatchett v. Molton*, 76 Ala. 410. The plea of the general issue cast upon the plaintiff the burden of proving every material allegation of the complaint. The defense had the right to meet such evidence with counter proof.—*Petty v. Dill*, 53 Ala. 645; 49 Ala. 140. ·

The deed tendered to Odum for his signature is not set out. The bill of exceptions states it was "in proper form and substance for appropriate conveyance." What these words embrace we do not know. There was evidence tending to show that, upon the reading of the deed, Odum replied, that he would not sign it, unless the railroad would agree for him to move his fences and improvements; and he was notified not

[Odum v. Rutledge & Julian Railroad Company.]

to remove any of the improvements. Now, if the deed tendered to him was a conveyance of more than a right of way across the land—a mere easement—Odum was not required to sign it, by the terms of the award of the arbitrators; and if more was demanded of him, as a condition precedent to the payment of the damages awarded by the arbitrators, the railroad was more in default than Odum. Furthermore, Odum was entitled to a reasonable time to advise himself as to whether the deed tendered to him for his signature accorded with the decision of the arbitrators, and his refusal to sign the deed, accompanied with the statement that he would sign it if it was in accordance with the decision of the arbitrators, can not be construed into a refusal to abide by his agreement, so as to incur the forfeiture provided therein, at least until he had a reasonable time, under the circumstances, to inform himself as to the extent of their decision. The award allowed the railroad ten days within which to pay the damages assessed. Three days after the rendition of the award, Odum signified his willingness to abide the decision of the arbitrators, tendered a deed to the right of way, and offered to receive the money; and in no way at any time, so far as we can discover from the evidence, has he signified a refusal to comply in every respect with the award. If the jury were satisfied from the evidence of the truth of these statements, the defense was made out under the general issue.

There was no error in excluding the testimony offered by the defendant to show that the president of the railroad company directed the arbitrators not to value the improvements, as the railroad corporation did not want them. Such proof, in a proper case, might operate as an estoppel; but this is an equitable rule, not cognizable in a court of law.

Set-off is not available under the general issue, and there was no error in refusing to charge the jury as requested in this respect.

In regard to a tender of money, the general rule is, that the money must be actually produced and proffered. It is well settled, however, that the proffer of the money is dispensed with, if the party is ready and willing to pay the same, but is prevented by the creditor's declaring that he will not receive it.—*Rudulph v. Wagner*, 36 Ala. 702. A tender, accompanied with conditions which the party has no right to impose, is not a legal tender. A mere tender of the money does not discharge the obligation. The debt remains, and to be available the tender must be kept up.

In the case of the appeal from the Probate Court, the appeal is dismissed.

[Scarborough v. Ala. Midland Railway Company.]

In the case of the appeal from the Circuit Court, the judgment of the lower court is reversed, and the cause remanded.