(107 So 80)

**DOWNING et al. v. STATE. (1 Div. 394.)**

(Supreme Court of Alabama. Dec. 17, 1925. Rehearing Denied Jan. 21, 1926.)

**1. Eminent domain ⟨key⟩317(2) — State held to take title in fee to condemned land.**

Where state condemned land by authority of Acts 1923, p. 330 et seq., putting into effect 1922 amendment to Const. 1901, § 93, it acquired title in fee and not an easement, with power under section 5 of act to exchange, sell, or lease any of such property, in view that Enabling Act contemplates permanent improvement.

**2. Eminent domain ⟨key⟩317(2)—"Title," without qualifying terms, means whole title.**

In the absence of qualifying terms, "title to property" acquired means the whole title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Title (To Property).]

**3. Eminent domain ⟨key⟩4—Authority for exercise of eminent domain strictly construed.**

Authority for exercise of eminent domain, being in derogation of private right, will be strictly construed, whether directly by state or its authorized grantee.

**4. Eminent domain ⟨key⟩317(2) — Taker under eminent domain acquires easement only in absence of contrary legislative intent.**

In absence of contrary legislative intent, taker under eminent domain acquires only an easement, or, at most, a qualified, conditional, and determinable fee.

**5. Eminent domain ⟨key⟩317(2)—Any statutory language which makes meaning clear held sufficient to provide title in fee for taker.**

Any language in statute which clearly expresses intention that title in fee shall pass in condemnation is sufficient to pass such title.

**6. Eminent domain ⟨key⟩1—Right to take land under power is statutory, and must be construed to be large enough to accomplish all that it is taken to do.**

The right to land taken under eminent domain is statutory, and must be construed to be large enough to accomplish all that it is taken to do.

**7. Eminent domain ⟨key⟩321—Docks commission held to condemn land for term coextensive with existence of state.**

Where state created docks commission, with no limitation as to how long it should exist, and with authority to condemn land, but without authority to condemn for any term shorter than its own life, land condemned was for term coextensive with existence of its creator, the state, which must be considered of infinite duration.

**8. Eminent domain ⟨key⟩317(1)—Interest in land taken depends on authority of article authorizing such taking.**

In proceeding to condemn land under Acts 1923, p. 335, section 6 of which provides condemnation shall be in manner provided by gener-

al laws of state, held law does not lend itself to definition of estate or interest acquired through proceeding under Enabling Act, such estate or interest depending on authority conferred by act authorizing condemnation.

**9. Eminent domain ⟨key⟩317(1)—In determining extent of title taken, record of probate court must be consulted.**

Where state sought to quiet title to condemned land, and question arose as to extent of title taken in condemnation, record of original proceeding in probate court must be regarded.

**10. Eminent domain ⟨key⟩317(2)—Docks commission held to have intended to take title in fee.**

Where petition in condemnation showed docks commission had determined to execute authorized improvement and prayed that right, title, and interest of certain landowners in their land be condemned to public use for purpose indicated, held fair meaning of such petition was intention by state to acquire title in fee.

**11. Eminent domain ⟨key⟩318—Condemnation invests interest only for use stated in application.**

In view of Code 1923, § 7499, interest in land sought to be condemned for particular use, whether easement or fee, must be condemned for uses and purposes stated in application.

**12. Eminent domain ⟨key⟩317(2)—Statute relative to order of condemnation construed in connection with another.**

Express statement in Code 1923, § 7499, that order of condemnation "shall vest in the applicant the easement proposed to be acquired" cannot be construed to exclude acquiring of title in fee, in view of section 7478, providing application in condemnation shall state "interest or easement" to be acquired.

**13. Eminent domain ⟨key⟩317(2)—Statute held not to prevent condemnation of interest other than easement.**

Statement in Code 1923, § 7499, that order of condemnation "shall vest in the applicant the easement proposed to be acquired" cannot operate to limit subsequent will of Legislature that interest other than easement may be made subject of condemnation.

Appeal from Circuit Court, Mobile County; C. A. Grayson, Judge.

Bill to quiet title to land by the State against Anna M. Downing and others. From a decree overruling demurrer to the bill, defendants appeal. Affirmed.

Smith, Young, Leigh & Johnston, of Mobile, and Hamilton & Caffey, of Brewton, for appellants.

The proceedings under section 7499 of the Code of 1923 and the order of condemnation did not vest in the state an indefeasible estate in fee simple, but a mere easement, or at most as terminable fee, and, should the lands ever cease to be used for the particular purposes for which condemned, they will revert

to defendants. A. G. S. v. McWhorter, 202 Ala. 455, 80 So. 839; Odum v. R. & J. R. Co., 94 Ala. 488, 10 So. 222; New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N. J. Eq. 398, 15 A. 227, 1 L. R. A. 133; Id., 47 N. J. Eq. 598, 22 A. 1076; 9 C. J. 1127 (44); Smith v. City of Minneapolis, 112 Minn. 446, 128 N. W. 819; Vought v. Columbus H. V. & A. R., 58 Ohio St. 123, 50 N. E. 442; Reed v. Board of Park Comm., 100 Minn. 167, 110 N. W. 1119; Bowden v. York Shore Water Co., 114 Me. 150, 95 A. 779; Fairchild v. St. Paul, 46 Minn. 540, 49 N. W. 325; Lazarus v. Morris, 212 Pa. 128, 61 A. 815; Lithgow v. Pearson, 25 Colo. App. 70, 135 P. 759.

Thos. C. McClellan, of Birmingham, for the State.

The Docks Commission Act authorizes the condemnation of property necessary to its purposes. Code 1923, §§ 2543, 2546. The work and improvement of the docks system are to be permanent, and to remain always under the management and control of the state. Const. 1901, § 93, as amended (Acts 1921, p. 1); Code 1923, § 2539. The act provides for the acquisition of title to the property, and title means fee simple. Code 1923, § 2541; Dingley v. Boston, 100 Mass. 544; Page v. O'Toole, 144 Mass. 303, 10 N. E. 851; U. S. v. Hunter, 21 F. 615; 20 Ann. Cas. 568. The petition sought, not a mere easement, but the fee. The order of condemnation followed the petition, and section 7499 of the Code of 1923 cannot apply.

SAYRE, J. By its bill in this cause the state seeks to quiet its title to certain lands acquired by condemnation for the use of the state docks commission at the port of Mobile. The bill states the entire case, so that the question at issue may be appropriately determined by a ruling on demurrer. For the state the contention is that its condemnation proceedings in the probate court of Mobile were had under authority and in agreement with the provisions of the act of September 18, 1923 (Acts 1923, p. 330 et seq.), putting into effect the amendment to section 93 of the Constitution (adopted November, 1922), authorizing the state "to engage in the work of internal improvement of promoting, developing, constructing, maintaining and operating all harbors or seaports within the state or its jurisdiction, including all kinds of terminal facilities at seaports," etc. Section 1. The contention for the state is that the proceeding conferred upon it an indefeasible title in fee; the insistence on the other hand being that the state acquired only an easement for the uses indicated, the ultimate title remaining in the parties defendant who owned the property at the time of the proceeding in question and to whom the property will revert in case the state, for any reason or in any manner, should abandon its docks project at Mobile.

[1, 2] What occasion there may be for the apprehension evidenced by the state's bill is not made to appear. In the briefs reference is made to a question that might arise in the event the docks commission should determine to exercise the power, vested in it by section 5 of the act, "to exchange any property or properties acquired under the authority of this act for other property or properties usable in carrying out the powers hereby conferred," and it is suggested that to use the power of condemnation to acquire property with a view to its later exchange to private persons, corporate or natural, would involve a violation of section 23 of the Constitution, providing, inter alia, that private property shall not be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner. The proposal of such an exchange of properties would bring to the surface the inquiry whether the fee or a mere easement had been acquired by the state through the process of condemnation contemplated by the act. In the last-named alternative, that is, in case the statute be construed as authorizing an easement only, the state, still retaining its ownership and control of the docks improvement, would have no title upon the faith of which to negotiate an exchange, and this circumstance, along with the fact that the Enabling Act contemplates a permanent improvement and its permanent operation, that "the title," meaning, in the absence of qualifying terms, the whole title, "to all property acquired under the authority of this act shall vest in the state of Alabama," and that the commission "may dispose of, sell or lease to others, at reasonable prices and for reasonable compensation, any," but, evidently, not all "of said property,"—these facts should suffice to sustain the state's contention as to the nature and extent of the title acquired by its proceeding under the act. In this connection perhaps it is well to note also that the owners—so to speak of the parties defendant—have been compensated to the extent of the full value of their lands. Ensign Yellow Pine Co. v. Hohenberg, 200 Ala. 149, 75 So. 897, and cases there cited.

[3, 4] It is true, of course, that the right of eminent domain is in derogation of private right, and that authority for its exercise, whether directly by the state or its authorized grantee, will be strictly construed, and this principle has in many cases been applied to the effect that the expropriation of land does not give a fee-simple estate therein, in the absence of express statutory language to that effect, but only a right to use and occupy the land for the purpose for which it is taken. Lazarus v. Morris, 212 Pa. 128, 61 A. 815. There are scores of cases on the subject, not all of them in accord. We will not undertake a review of them. We think the following excerpt from Bowden v. York Shore Water Co., 114 Me. 150, 95 A. 779, fairly

states the status of opinion on the subject, and expresses the reasonable rule of interpretation to be applied to the statute and the proceeding under review:

"Whether an eminent domain taking vests an absolute fee is a question concerning which the courts are not in entire accord. In some cases the character of the use seems to be the determining factor; in others, the provisions of the statute under which the taking is made. In some statutes it is expressly provided that the fee shall vest in the taker; in others, provision is made merely for taking and holding for specified public uses. * * * The greater weight of authority, we think, sustains the proposition that unless a legislative intent is discoverable [that] an absolute fee shall vest, the taker takes only an easement, or, at most, a qualified, conditional, and determinable fee. And in such case, if the use be abandoned, the entire title is revested in the owner"—citing adjudicated cases and other authorities.

[5, 6] But it is not necessary, we think, that any technical language be used to vest a fee in the public. Washington Cemetery v. Prospect Park, 68 N. Y. 591. Or, adopting the language of the Supreme Judicial Court of Massachusetts, in Newton v. Perry, 163 Mass. 321, 39 N. E. 1032, we will say:

"There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient, and a very little more than 'take and hold' has been held enough. * * * But [after citing cases] it is plain from these, as from all the cases, that the purpose of the taking must fix the extent of the right. The right, whether it be called easement or by any other name, is statutory, and must be construed to be large enough to accomplish all that it is taken to do."

It may be that "to doubt in such a case is to deny," as said by the New Jersey court in New Jersey Zinc & Iron Co. v. Morris Canal & Banking Co., 44 N. J. Eq. 404, 15 A. 227, 1 L. R. A. 133, cited by appellants in this cause; but there are doubts and doubts, and the cases appear to recognize the rule that necessary or, as some of them preferably phrase it, fair implication affords sufficient and proper basis for the conclusion that the vesting of an unqualified fee is intended.

[7, 8] As we have said, in effect, the act contemplates a permanent improvement and its perpetual operation, and the provision of section 6 is that, "for the acquiring of rights of way and property necessary for the construction of terminal railroads and structures * * * the state, acting through said commission, shall have the right and power to acquire the same by purchase, by negotiation, or by condemnation; and should it elect to exercise the right of eminent domain, it may proceed in the manner provided by the general laws of the state of Alabama," etc., and various prescriptions of the chapter of the Code on the subject of eminent domain are re-

ferred to by the parties as going to sustain their respective contentions. But in our opinion the general law does not lend itself to a definition of the extent of the estate or interest possible to be acquired through a proceeding under the Enabling Act. The general law serves only to define the manner of the procedure to be followed and the operation and effect of decrees of condemnation to be rendered in accordance therewith. The extent of the interest or estate to be acquired thereby depends, in the first place, upon the authority conferred by the act. There is no occasion to deny authority to condemn a mere easement if the commission were so minded, but there is no authority to condemn for any term short of the life of the commission. Ensign Yellow Pine Co. v. Hohenberg, supra. That life, in the absence of legislative enactment to a different effect, will be coextensive with that of its creator, the state, which must for practical purposes be considered as of infinite duration. This consideration also lends itself to the conclusion that the Legislature intended that the commission should have power to condemn the fee in any lands for its contemplated improvement.

[9, 10] Nor is there anything in the record of the probate court, which also must be consulted, to indicate that the proceeding there contemplated a condemnation of any interest or estate less than the absolute fee. By the petition which set the proceeding on foot it appeared that the docks commission had determined to execute the improvement authorized by the Enabling Act and, to that end, to condemn to the public use the parcels of land owned by defendants and described therein, and the prayer was that the right, title, and interest of defendants therein be condemned to the public use for the purpose indicated. We think the fair meaning of this is that the state intended to acquire a title in fee simple. Dingley v. Boston, 100 Mass. 554. The judgment was that the petition to condemn to the public use shown thereby, as authorized by the amended Constitution and the Enabling Act, be granted, after which commissioners were appointed and damages assessed as provided by the general law of eminent domain.

[11–13] Appellants refer to section 7499 of the Code of 1923, where it is provided that "the order of condemnation upon the payment of the sum ascertained and assessed by the verdict of the jury [in case of an appeal to the circuit court], or the deposit thereof in court for the defendant, shall vest in the applicant the easement proposed to be acquired for the uses and purposes stated in the application and for no other uses or purposes," and in the same connection quote from A. G. S. R. Co. v. McWhorter, 202 Ala. 455, 80 So. 839, and Odum v. R. & J. R. R. Co., 94 Ala. 488, 10 So. 222, as going to show that, under statutory proceedings to condemn a right of way for a railroad, the railroad com-

pany acquires only an easement in the land for the uses and purposes stated in the application, while the fee remains in the owner. Of those decisions, and of the code section as affected by them, it needs only to be noted that railroad companies for "ways and rights of way" may by condemnation acquire only "ways and rights of way" (section 7018 of the Code), which has been construed, properly, of course, as the right to acquire an easement only. Nor will it be denied that the interest in land sought to be condemned for a particular use, whether easement or fee, must be condemned for the uses and purposes stated in the application. Section 7499 of the Code so provides. True, that section stipulates that the order of condemnation "shall vest in the applicant the easement proposed to be acquired," but that is a mere inapt use of language, or, rather, parsimony in the expression of idea, for section 7478 requires that the application shall state the "interest or easement" to be acquired, and, in any event, section 7499 cannot operate to limit the reasonably well-expressed subsequent will of the Legislature that interests other than mere easements may be made the subject of condemnation. Here the question is what interest in land the act of 1923 authorizes the docks commission to condemn, and what interest the commission did undertake to condemn. Construing the act and the record of the proceedings in these cases with due deference for the rights of appellants, but fairly with a view to the ascertainment of the legislative will and the meaning and effect of the proceedings shown, we find no substantial reason to doubt that the state, by its proceedings in the probate court of Mobile, acquired an unqualified fee in the lands of defendants.

By the act the docks commission is vested with the right of eminent domain "for the acquiring of rights of way," it is true, but also "property necessary for the construction of terminal railroads and structures, including railroad crossings, wharves, piers, docks, quays, grain elevators, cotton compresses, warehouses, and other riparian and littoral terminals and structures and approaches thereto needful for the convenient use of the same"—structures of a permanent nature, and presumptively, as we have heretofore noted, to be retained and operated through all time. For a place in which to locate these improvements the state must pay the full value of the land occupied, nor does the act contain any intimation that the docks commission may condemn any land other than such as may be "needful for the convenient use" of its terminals and structures. In decisions to which we have referred (A. G. S. R. Co. v. McWhorter and Odum v. Railroad, supra), and others of like tenor, it is held that, while a railroad company may use the whole of the right of way which it has condemned, if necessary or proper for its rail-

road purposes, it cannot exclude the owner of the ultimate fee from its use unless for the purposes to be subserved by the condemnation; but that was held in view of and because the statute, explicitly, it may be said, authorized the condemnation of an easement only. In the case before us the uses and purposes to be subserved are different, and the enabling language of the statute is different. It is by no means as narrow as that employed when authorizing condemnation for railroad "ways and rights of way."

What has been said applies equally to each of the proceedings brought into question.

It follows that the decree of the circuit court, sitting in equity, overruling defendants' demurrer to the bill of complaint, was correctly rendered, and should be affirmed.

It is so ordered.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.