David K. BROOKS, Plaintiff,

v.

Edward Samuel SHEPARD, Agatha C. Shepard Jordan, Daniel G. Shepard, Board of School Commissioners of Mobile County, Alabama, John F. Walker and W. W. Hawkins, Defendants.

Civ. A. No. 1729.

United States District Court
S. D. Alabama, S. D.

Dec. 26, 1957.

Charles R. Butler (of Hamilton, Denniston, Butler & Riddick), Mobile, Ala., for plaintiff.

Bart B. Chamberlain Jr., Mobile, Ala., for Shepards.

S. P. Gaillard, Jr. (of Gaillard & Gaillard), Mobile, Ala., for Walker and Hawkins.

Palmer Pillans (of Pillans, Reams, Tappan, Wood & Roberts), Mobile, Ala., for Board of School Com'rs.

THOMAS, District Judge.

Action seeking a declaratory judgment to determine what are the plaintiff's

rights under oil, gas and mineral leases made to him by, respectively, the Board of School Commissioners of Mobile County (which, for brevity, will be referred to herein as the School Board), and by Edward Samuel Shepard and wife, Daniel G. Shepard and wife, and Agatha C. Shepard Jordan and husband.

The complaint recites the condemnation by the School Board, for use for school purposes, of the real property described in the complaint, on which real property the said leases were made. The lease by the School Board is averred to have been made on September 16, 1955; and the lease by Edward Samuel Shepard and Daniel G. Shepard and their wives, and Agatha C. Shepard Jordan and her husband, is averred to have been made on December 12, 1955.

The School Board was paid by Brooks a cash consideration, commonly styled a bonus, which is averred in the complaint to have been $12,429.94. It was developed in the evidence that the lease from the School Board covered other lands besides the lands now in controversy, and the amount paid to the School Board and allocable to this land was $10,429.94, as shown in the stipulation filed in evidence in the cause.

The complaint does not aver any lease to plaintiff from either Walker or Hawkins, and it does not appear from the evidence that there was any.

Attached to the complaint as an exhibit is a certified copy of a petition by the School Board seeking to condemn the land involved in this controversy. This petition shows that it was filed against Edward Samuel Shepard, Daniel G. Shepard, Agatha C. Shepard Jordan, Roland E. Shepard and Charlotte S. Knighton; and that, in August of 1955, Roland E. Shepard and Charlotte S. Knighton let their undivided one-fourth interest in the said lands by an oil, gas and mineral lease to one H. H. Sullivan, through whom Walker and Hawkins derive their claim.

So, if the School Board obtained a valid title in fee by condemnation proceedings recited in the complaint, Brooks has a valid lease to the entirety of interest in the oil, gas and minerals in said land; and, if the title to the said oil, gas and minerals did not pass to the School Board under the condemnation proceedings, Brooks has a lease on three-fourths of the said interest, and Walker and Hawkins have their respective claimed rights in the other one-fourth of the said interest.

The complaint avers the conflicting claims, and charges that plaintiff has been threatened with proceedings seeking injunctive relief if plaintiff should proceed to explore for oil on or adjoining the premises. This allegation is sustained by the evidence. So plaintiff seeks from this court a judgment declaring where the title lies, in order that he may proceed with his exploration for oil. It is conceded by all the defendants that there is a justiciable controversy.

Jurisdiction is founded upon diversity of citizenship. The amount involved is in excess of $3,000.

All parties concede that the plaintiff is entitled to have his rights fixed, as he seeks to do by his complaint. The controversy, therefore, is between the School Board, on the one hand, and what may be referred to, for brevity, as the "Shepard interest," on the other hand. The case was tried on that basis.

The contention of the School Board is that, by its condemnation proceedings, it acquired a fee simple title to the lands described in the complaint; and that, having acquired such fee simple title, the School Board owns the oil, gas and other minerals in and under the said lands, as well as every other portion of the lands.

The contention of the Shepard interest is that the School Board, under the decree of condemnation, did not procure title to the oil, gas and other minerals under the said lands, but simply to the surface of the lands which it purposed to devote to school purposes.

The complaint has attached thereto, as exhibits, copies of certain of the proceedings in the condemnation cause in the Probate Court, and the decree of the Circuit Court of Mobile County, render-

ed on an appeal from the Probate Court's decree. It appears therefrom that the petition seeking condemnation was filed in December 1948; and that, in regular course, the matter proceeded to a decree of condemnation in the Probate Court; and that then the matter proceeded, on appeal to the Circuit Court, to final decree in the Circuit Court in June 1949. No appeal was taken from that decree. The School Board now contends further, in this proceeding in the instant cause, that the decree of condemnation rendered by the Circuit Court in June of 1949 was a final decree that settled the rights of the parties, and that such decree cannot now be attacked collaterally in this case, commenced in this court on November 13, 1956. I deem this contention sound.

Aside from the conclusion just stated, I am of opinion that the School Board obtained, by its condemnation proceeding, a title in fee that included the oil, gas and other minerals equally with all the rest of the title.

There are now set out the findings of fact and conclusions of law.

### Findings of Fact

There are not repeated here matters which are undisputed and which are stated hereinbefore.

1. On December 14, 1948, the Board of School Commissioners of Mobile County filed, in the Probate Court of Mobile County, its petition for the condemnation of certain lands, which included the lands now in controversy. In Article II of the petition, it was stated: "Your petitioner desires to seek to acquire by condemnation a title in fee to the real property in the County of Mobile, State of Alabama, hereinafter particularly described * * *." The prayer of the petition was: "* * * that upon the hearing of this petition, this Honorable Court will condemn to petitioner's use the title in fee to each of the said tracts of land hereinbefore described."

2. Pursuant to the governing Alabama statute, the Probate Court appointed commissioners to assess the damages for the taking of the land, and to report to the court. The commissioners filed their report, reciting that they had been appointed to assess the damages and compensation to which the owners "would be entitled on account of the condemnation by the Board of School Commissioners of Mobile County of the fee in that certain real property * * *" (describing the property). They fixed the value of this piece of property at $2,000.

3. The School Board paid the $2,000 into court, and a final judgment of condemnation was rendered by that Court. By that decree, it was ordered, adjudged and decreed "that all the above described property be and the same is hereby condemned to be used by the Board of School Commissioners of Mobile County, Alabama, for public use and there is hereby vested in the said Board of School Commissioners of Mobile County, Alabama, the title in fee to all of the said property * * *."

4. The Shepards appealed to the Circuit Court of Mobile County, where further proceedings were had. The amount of damages was raised from $2,000 to $2,660, and the Shepards were allowed to keep the house on the land, which house was subsequently moved off the land by the School Board for the Shepards. The $2,000 paid into the Probate Court had been transmitted by that court to the Circuit Court; and the School Board paid the additional $660 into the Circuit Court, whereupon the final judgment of condemnation was rendered there. This final judgment was rendered on June 28, 1949, and declared that the lands described therein "be, and the same are, hereby condemned in fee for the uses or purposes set forth in the petition in this cause, which petition was originally filed in the Probate Court of Mobile County, Alabama."

5. There was no appeal, but apparent acquiescence in the decree. The evidence does not disclose any question of the validity, or of the effect, of any of the proceedings until the Shepards filed their bill in equity in the Circuit Court of Mobile County in September of 1955, which bill was subsequently dismissed without

prejudice. In that proceeding, they made the same contention that they are making now in the instant case. In that equity proceeding, in the Circuit Court of Mobile County, there was demurrer to the bill for want of equity, which involved a debate of the same questions that are debated in the instant case. The demurrer was sustained by the Chancellor, and thereupon the complainants made their dismissal without prejudice.

## Conclusions of Law

■■ At the outset, it should be stated that, the sole ground for jurisdiction of this cause by this court being diversity of citizenship, this court, determining questions involving Alabama law and the effect resulting from proceedings in Alabama courts, sits in effect as an Alabama court, and enforces the law as it is conceived to be in Alabama. "The essence of diversity jurisdiction is that a federal court enforces State law and State policy." Angel v. Bullington, 330 U.S. 183, 191, 67 S.Ct. 657, 662, 91 L.Ed. 832.

The general body of the Alabama law of eminent domain is set out in Title 19 of the Code of Alabama of 1940. Section 1 thereof authorizes the State and its public sub-divisions, "proposing to take lands, or to acquire an interest or easement therein, for any uses for which private property may be taken," to apply to the Probate Court for order of condemnation. This is done by filing application therefor.

Section 3 declares the contents of the application, which includes a statement of "the uses or purposes for which the land is to be taken, and the interest or easement therein to be acquired." The same Section 3 also declares that where there are several tracts of land lying within one county, "of which portions are proposed to be taken, or in which an interest or easement is proposed to be acquired," the applicant may join them all in the same application (as was done in the condemnation proceedings now under consideration).

Section 14 deals with the question of reduction of compensation by reason of incidental benefit to the property not taken. This section declares that there shall be no deduction because of incidental benefits to the remaining lands "in consequence of the uses to which the lands to be taken, or in which the easement is to be acquired, will be appropriated * *."

Sections 17, 18, 19, 20, and 21 deal with appeals to the Circuit Court from condemnation orders of the Probate Court. Section 21 declares that the Circuit Court "shall make an order of condemnation in accordance with the application * * *."

■ It is implicit in this statutory scheme that the condemning body may take an easement, or a partial interest, or the entire fee in the land.

The statutory delegation of powers of eminent domain to county boards of education, under the general school laws of Alabama, is made by Section 99 of Title 52, Code of Alabama of 1940. It declares that county boards of education "shall have the right to acquire, purchase by the institution of condemnation proceedings if necessary, lease, receive, hold, transmit and convey the title to real and personal property for school purposes."

The power of eminent domain is specifically vested in the Board of School Commissioners of Mobile County by act of the Legislature of Alabama approved June 30, 1931. Local Acts of Alabama of 1931, p. 157.

■ The delegation of the right to acquire title to land, in condemnation statutes, contemplates the acquisition of the whole title. Downing v. State, 214 Ala. 199, 200, 107 So. 80.

■ The School Board sought to acquire the title in fee to the premises in question, and procured a final judgment vesting in it the entire title, which is the title in fee. That a title in fee to land is a title to everything seems an elementary statement, without the necessity for extensive citation of authority. A clear statement of that thought is contained in the decision of the Court of Appeals, 8th Circuit, in Magnolia Petroleum Co. v. Thompson, 106 F.2d 217, 224. This ex-

cludes the notion that there may be vested a fee in land that yet would not comprise the oil, gas and minerals therein or thereunder.

■ It is settled law, as I understand it, that the determination of the necessity for taking, under the law of eminent domain, lies exclusively in the administrative body and, absent fraud, is not subject to judicial review. The thought is clearly stated and applied by the Supreme Court of the United States in Rindge Co. v. Los Angeles, 262 U.S. 700, 709, 43 S.Ct. 689, 67 L.Ed. 1186. The necessity for the taking of this particular property was determined by resolution of the School Board, adopted at its meeting of November 10, 1948, and referred to in Article XVIII of the stipulation filed in this cause, which resolution is appended as an exhibit to the said stipulation.

■ The attack on the validity of the decree of condemnation, vesting title in fee in the School Board to the lands in controversy, as insufficient to carry to the School Board the title to the gas, oil and minerals in, on or under the lands, was ably and forcefully presented by counsel for the Shepard interest. I have read and considered the authorities urged by him in argument, particularly Superior Oil Co. v. Harsh, D.C., 39 F.Supp. 467, which he relied on heavily. I have been unable to reach the conclusion that such authorities should govern the decision in the instant case.

The power of eminent domain is inherent in the concept of sovereignty. Under our governmental scheme, the people, in their aggregate capacity, constitute the sovereign. Except so far as restrained by constitutional limitations, the people are supreme in legislative action. They act through their legislature. The people of Alabama have so acted. The legislation here apposite has been summarized earlier in this opinion. It seems to me to contemplate a valid condemnation of the fee—the whole title—should the condemning authority seek such. There is no preventive provision in the Alabama Constitution.

■ If this be sound, no further consideration is necessary. If it be thought unsound, still there has been no taking of property without due process of law, as the Shepard interest contends, for they have had due process of law. If the Shepards' insistence be sound, that the School Board was without authority to condemn the fee, the decree condemning the fee (which necessarily included the oil, gas and other minerals as an integral part of the whole title that constitutes the fee) was error, subject to reversal on appeal. There was no appeal, and now it is too late to attack the judgment here. They had their day in court.

Upon study and consideration of the facts and the authorities cited by both sides, I deem sound the conclusions set out below:

### 1.

Under Alabama law, upon proper proceeding in a court of competent jurisdiction, title in fee may be acquired by the exercise of the power of eminent domain. The purpose for which it was exercised by the School Board was a public purpose, and there was a determination of necessity by the condemning body.

### 2.

There was a final judgment in a court of competent jurisdiction, vesting in fee in the School Board the title to the property here in controversy. This vested the entire title, including oil, gas and other minerals.

### 3.

These conclusions being arrived at, it must follow that the attack on the School Board's title fails.

### 4.

But, if there might initially have been merit in the contentions made by the Shepard interest in the instant case, those contentions could, and should, have been made in the condemnation proceedings. They were not made, and there was a final decree by a court of competent jurisdiction vesting the title in fee in the lands. If such a judgment were error, on the theory now advanced by the Shepards, such error was curable on appeal.

No appeal was taken; and the matter was foreclosed adversely to the Shepard interest some seven years ago, and cannot now be re-opened.

Let a decree be entered in accordance with this opinion.