133 So.2d 375

**STATE of Alabama**

v.

**Elizabeth Hill GOODWYN and John L. Goodwyn.**

**3 Div. 944.**

Supreme Court of Alabama.
Sept. 21, 1961.

MacDonald Gallion, Atty. Gen., Geo. B. Azar and Jos. D. Phelps, Sp. Asst. Attys. Gen., for appellant.

**620**

Hill, Hill, Stovall & Carter, Montgomery, for appellees.

MERRILL, Justice.

This is an appeal by the State from a jury verdict and judgment of $80,000 as compensation to appellees in a condemnation proceeding in which 8.5 acres of a 33.-33-acre tract were taken for an interstate limited or controlled access highway. The commissioners in probate court had awarded $70,000 and both the State and the appellees appealed to the circuit court. The State's motion for a new trial was overruled.

The only question before the circuit court was the amount of damages to be awarded.

Appellant's first argued assignment of error is that the court erred in overruling the motion for a new trial. Such an assignment of error is sufficient to invite a review of the ruling on the basis of any ground well stated in the motion and properly argued by appellant. Grimes v. Jackson, 263 Ala. 22, 82 So.2d 315.

But in the fourteen pages of appellant's brief devoted to this assignment of error, no ground of the motion for the new trial is mentioned or referred to in any way.

Grounds of a motion for a new trial not argued in brief will not be considered on appeal. Chattahoochee Valley Railway Co. v. Williams, 267 Ala. 464, 103 So.2d 762; McClendon v. McKissack, 143 Ala. 188, 38 So. 1020. Assignment No. 1 presents nothing for review. This also applies to assignments of error 2, 3, 4 and 5.

It is difficult to determine just what remaining assignments of error are argued, but it appears that the appellant's main contention is that the court erred in rulings on the admission of evidence as to the actual values of platted lots in the tract or of lots in comparable subdivisions. In answering appellees' contention that the argument in appellant's brief was too general and confusing, appellant stated in its reply brief:

"Each assignment of error argued by Appellant addresses itself to the error of the trial court in continuously allowing Appellee to value the subject property on a lot basis. As Appellee states on page 11 of his brief, there is but one issue presented in the instant appeal. This is the only issue properly argued by either brief. Appellant urges that it is clearly error to allow property which has not been actually physically subdivided to be valued on a lot basis, especially when it was ex-

pressly conceded throughout the trial that the highest and best use of the property was for subdivision purposes. The proper unit of valuation in this proceeding was the entire 33.33 acre tract, before and after the taking. The trial court went far beyond justifiable discretion in allowing lot valuations to be vividly and extensively presented through cross-examination, and it was clearly error to allow Appellee's witnesses to testify as to lot valuation on direct examination."

It is necessary to give a brief summary of the facts relating to the land in question.

Mrs. Goodwyn received the entire tract of 53 acres by deed of gift from her father in 1951. Planning of a subdivision was begun and the Federal Housing Administration suggested a lot layout of the subdivision in 1952, but owing to the absence of sewage the project was delayed until 1956. The overall plan of development was submitted to the Planning Commission of the City of Montgomery and was given preliminary approval in April, 1956. This was necessary as the property was within the city limits.

The south 20 acres was developed first and was known as Section 1. Water and sewage were stubbed to the border of Sections 2 and 3, the 33.33 acres in question here, and the streets in Sections 2 and 3 were grubbed out.

By 1958, it was determined that Section 1 had been a successful development and plans were begun to develop Section 2. Final approval for this section was given by the Planning Commission on February 26, 1959. The surveyor reported finding some highway engineering stakes on the north part of Sections 2 and 3 and upon inquiring, the Goodwyns were informed that the Highway Department was considering running an interstate highway through the tract. No further work was done toward the development of Section 2 because, as Mr. Goodwyn testified, "it looked pretty sil-

ly to me to go on and put improvements there, and for the State to have to come along and pay for those improvements."

Appellees introduced in evidence the overall plat showing the lots in all three sections. It was also shown that Sections 2 and 3 would yield 63 lots before the taking and 39 lots after, resulting in a loss of 24 lots.

The State introduced maps on which the lots and subdivision lines were omitted, but appellees introduced the official right-of-way map of the Highway Department showing that Section 2 was platted as a subdivision and the lots in that section that would be taken by the right-of-way.

It was shown that all the lots in Sections 2 and 3 had been fully laid off on the ground with iron pins placed at the corners, and all engineering work had been completed on both sections. Final approval by the Planning Commission had been given on Section 2 and preliminary approval on Section 3.

In view of appellant's statement quoted from brief, we discuss the testimony of the first witness when the question of lot values arose. Edward Lowder, an expert witness for the State, testified, on direct examination, that he was familiar with the property, that his company had purchased 160 acres in the vicinity of the Goodwyn land for $2,350 per acre and 80 acres for $1,600 per acre, but the Goodwyn subdivision "was designed for a higher class neighborhood;" that the highest price his company paid for land to be subdivided was $3,000 per acre; and the reasonable value of the 33.33 acres was $2,500 to $3,500 per acre. On cross-examination, after some preliminary objections, the following occurred:

"Q. Did you then, Mr. Lowder, form an opinion as to what these lots would bring if the subdivision was completed?

"Mr. Azar: Your Honor, we just want the benefit of our objection an exception in the Record.

"The Court: Yes.

"The Witness: All right. I am supposed to answer now?

"The Court: Yes.

"The Witness: All right. I would say somewhere in the neighborhood of from $5200 to $7500 a lot. It all depends—I may be way off from what they are getting but I don't know, but there may be some trees—there are areas that don't have trees on them which would not be as desirable and, of course, I am not familiar with the engineering plans nor how large the lots are. I assume from what you have out there, Judge, that the minimum would be somewhere more than a hundred feet and that would be my guess on it and that would be my observation on it."

Appellant's position at trial and here is that the proper unit for valuation purposes was and is the entire tract of 33.33 acres and any evidence that the 33 acres were divided into 63 lots created an improper unit for valuation.

We agree with the first part of the contention, but cannot agree with the second.

■ It is settled that one whose property is taken under eminent domain proceedings should receive compensation based upon the use to which the property is adapted or reasonably adapted. Housing Authority of City of Decatur v. Decatur Land Co., 258 Ala. 607, 64 So.2d 594; Alabama Power Co. v. Herzfeld, 216 Ala. 671, 114 So. 49.

It was and is conceded, as stated by appellant's counsel at trial "that the highest and best use of this property is for subdivision purposes for residential property."

■ The rule of compensation in a condemnation proceeding in this state where only a part of a tract is taken is that the owner·is entitled to the difference between the value of the entire tract immediately before the taking and the value of the part remaining after the taking, giving effect to any enhancement in value to the part remaining in case the condemnation was for a public highway, as provided in Tit. 19, § 14, Code 1940. St. Clair County v. Bukacek, ante, p. 323, 131 So.2d 683; Morgan County v. Hill, 257 Ala. 658, 60 So.2d 838.

■ Here was an expert witness for the condemnor, testifying that the 33 acres were worth $115,000 before the taking and $92,520 after the taking, making a difference of $22,480. It being conceded that the highest and best use of the tract was for subdivision into residential lots, it was appropriate to ascertain if he had considered its worth if sold by lots.

■ An appraiser who testifies to his opinion as to the value of property condemned may be interrogated as to the basis of his opinion, and the extent of this examination "was addressed to the court's· irrevisable discretion." Alabama Power Co. v. Berry, 222 Ala. 20, 130 So. 541, 544. Such facts are considered in support of the judgment or opinion of the witness even though they do not become independent evidence to establish the fact of inquiry. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 7 A.L.R.2d 773.

But we think there was a more compelling reason that the evidence as to the value of the lots was admissible in this case.

■ Here, we have an actual, going subdivision, the first section of which had proven successful, and, according to one of the State's experts, the subdivision "is about one of the nicest in the city." When property has reached the stage of development as has this subdivision, no competent appraiser could disregard the value of the lots, and an appraised value based solely upon acreage would not only be unrealistic, but unfair to the landowner.

. Each of the State's appraisers testified that he did take the value of the lots into consideration in stating his opinion of the

before and after value of the 33-acre tract. And appellant's contention that the damages assessed by the jury were based solely upon a lot basis is not substantiated. Taking the lowest appraised price per lot by the State's appraisers, and multiplying it by the 24 lots taken, the total would be over $100,000, with no consideration being given to any damages resulting to the remaining lands which were separated by the right-of-way.

All the witnesses were asked to exclude any profits or speculation from their appraisal of the value of either the tract or the lots.

Appellant argues that the affirmance of this judgment would amount to the overruling of the three cases next cited and discussed. We disagree.

The first case is Alabama Central Railroad Co. v. Musgrove, 169 Ala. 424, 53 So. 1009, 1011. There, the landowner had platted the land, in a residence section of Jasper, into blocks and lots. The landowner still owned all the land, not having sold any lots. This court said:

"* * * the damages recoverable extend, not only to the land actually taken, but incidently to the entire tract delineated on the map as blocks, the court on the trial should have regarded the tract as the unit for valuation, and committed reversible error in allowing consideration of the lots as units, and especially did it err in allowing proof of value of the separate lots by the front foot."

There is no conflict in the Musgrove case and the instant case. Here, there was no effort to prove the separate value of each lot, or the value of the front footage of each lot, and the tract was considered as a 33-acre unit. But since all parties conceded that it was best suited for development as a subdivision, the plans of which had already been filed and approved, it would have been unjust to treat the 33 acres as mere acreage without any consideration of value of the lots. The experts testifying for the appellant stated that they did consider the value of the lots in estimating the before and after value of the property.

The second case is that of Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 7 A.L.R.2d 773. This court held that the owner, whose land was platted on paper, would not be permitted to describe a "speculative enterprise" and base his estimate of value on the "profits" he would expect to receive from the enterprise. Here, the appraisers testifying for appellees stated their estimate of the before and after value was based upon the actual value of the tract with all speculative profits specifically excluded, and not on a value determined by aggregating the values of each individual lot. There is no conflict with the Thornton case in the holding here.

The third case is Etowah County v. Clubview Heights Co., 267 Ala. 355, 102 So.2d 9, 10. There, no lots had been laid out on the ground and the assignment of error termed the map of the subdivision fictitious. We again held that "the map taken with the testimony of the witness demonstrates that the witness was testifying as to the use to which the land could be put." But there, as in the instant case, there was no attempt to show speculative profits. Again, we perceive no conflict.

There was a wide discrepancy in the testimony of the experts. Appellant's witness Edward Lowder placed the damages at $22,480; the witness William Nicrosi appraised the damage at $24,890; and the witness Donald Pierce appraised the before and after difference at $27,000. Appellees' experts and their estimates of the difference in the before and after values were: Lester Hall, $95,000; Ed Dennis, $107,550; and John Haardt, $119,000.

These experts, regardless of whether called by the State or the appellees, agreed that the value of this 33-acre tract should not be based solely upon an acreage value. All considered the value of the lots within

the acreage, but the before and after value was applied to the entire tract and not based upon a lot by lot value.

The trial court orally charged that "the jury is not to consider at all any speculative or imaginary uses of the property or merely speculative plans of the land owner." Also, the trial court gave some 29 written charges requested by appellant, including some that the compensation could not be based upon how many lots there were, or the price for which they could sell, or an aggregate lot basis, or the value of any subdivision, or the value of all the proposed lots, or any speculative value or for any anticipated loss of profits.

■ Appellant argues that it was error to permit appellee, John L. Goodwyn, to testify that the 33-acre tract was divided into 63 lots. The cases cited by appellant applied to subdivisions which had not reached the stage of development as the one here. Some of the cases cited hold that a map of a proposed subdivision could not be introduced. Those cases conflict with our case of Etowah County v. Clubview Heights Co., 267 Ala. 355, 102 So.2d 9, 10, where we sanctioned the introduction of the map even though the land "was undeveloped and no lots had been laid out upon the ground."

Furthermore, the map or plat of the tract showing all the lots was already in evidence, as was the State's map showing some of the platted lots in Section 2. The only effect of this particular testimony was to give the total number of lots in the tract, which the jury could ascertain by counting the platted lots on the maps already in evidence. No error appears in this procedure.

We think we have shown that the tract was considered as a whole for valuation, but evidence as to the actual value of the lots was admissible because this tract was a part of a going subdivision, and the plans had already been approved by the local authorities. The evidence also shows that the lot values were set by the witnesses after excluding speculative values or anticipated profits.

The judgment of the lower court is affirmed. For a case factually similar, where the court reached the same conclusion as we have, see State Through Department of Highways v. Boyer, La.App., 130 So.2d 738.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.