This is a condemnation case.
On June 18, 1982, the State of Alabama filed an application for an order of condemnation in the Probate Court of Elmore County, seeking to acquire the fee simple title to certain real estate in that county for use as a public highway. The desired property cuts across three lots, Lots B, C and D, in a community known as Penick Bend. These lots were deeded by the owner to his children many years ago and have been used, in conjunction with two others, Lots A and E, as a single farming unit for more than forty years. A diagram of the land area in question will facilitate a better understanding of the issues in this case. See appendix. The proposed right of way would consume approximately .16 acre of Lot B, 10.19 acres of Lot C, and 9.47 acres of Lot D.
After a hearing, the probate court entered orders of condemnation, setting just *Page 1115 
compensation at $25,381.76 for Lot B, $36,775.84 for Lot C, and $35,957.92 for Lot D. The State perfected a separate appeal for each order to the Circuit Court of Elmore County. After a jury trial, a verdict was returned fixing just compensation for Lot B at $7,400.00. The owners of Lot B appealed after a motion for a new trial was denied. The owners present a number of arguments for reversal; each shall be addressed separately.
Where only a part of a tract of land is taken in an eminent domain proceeding, the owner is entitled to the difference between the value of the entire tract immediately before the taking, and the value of the part remaining after the taking.
McArdle v. State, 408 So.2d 491 (Ala. 1981); State v. McLemore,387 So.2d 827 (Ala. 1980).
The owners' first argument, which is very well briefed by counsel, is that all five lots in Penick Bend, A through E, constitute one entire tract or unit of land. Thus, just compensation must be computed viewing the entire unit as a single tract of land. This appears to be the first time this issue has been addressed by an appellate court in Alabama. However, other jurisdictions have considered it.
There appears to be no one accepted rule of law to apply in these cases. The factors most emphasized in determining unity of land for the purpose of awarding damages in eminent domain cases are unity of title or ownership, physical contiguity and unity of use. See generally 29A C.J.S. Eminent Domain § 140 (1965); 27 Am.Jur.2d Eminent Domain § 320 (1966). The parties agree that the only factor in dispute in this case is that of unity of title or ownership.
Three divergent views have been taken by other jurisdictions when determining the necessity of, as well as what constitutes, unity of ownership. The apparent majority of jurisdictions requires that the ownership interests in each parcel must be identical in both quality and quantity, before the parcels may be claimed as a single unit. Annot., 95 A.L.R.2d 887, 890-93. A second view allows that, although unity of ownership is necessary, the party or parties involved need not have the same quality or quantity of interest or estate in all parts of the tract. Instead, there must only be a "substantial unity of ownership." See Barnes v. North Carolina State HighwayCommission, 250 N.C. 378, 109 S.E.2d 219 (1959). See generally
Annot., 95 A.L.R.2d 887, 893. Finally, a third view has been expressed wherein unity of ownership is simply not considered a necessity in all circumstances. Annot., 95 A.L.R.2d 887, 894. The question becomes, which of these views is the most compatible with Alabama law?
It is our opinion that the better rule is that of the majority of jurisdictions, which requires a strict unity of ownership. That is, identical ownership of each parcel is required under Alabama law.
Section 18-1-12 of the Code of Alabama 1975 provides:
 "If there are several distinct tracts of land owned, claimed or held by different persons embraced in the application . . . the court is not required to treat the proceedings as a joint action, but may hear and determine the application separately as to the parties and lands named." (Emphasis added.)
The emphasized language clearly explains and defines "distinct tracts of land" as those "owned, claimed or held by different persons"; i.e., in order to have separate parcels of land be considered as a unit for eminent domain proceedings, the parcels must be owned by the same person or persons, and the claims as to each must be the same or identical as opposed to "different." At least one other court has similarly construed the law in Alabama. See City of Eufaula v. Pappas, 213 F. Supp. 749
(M.D.Ala. 1963). However, even if the requisite unity of ownership does not exist in a particular instance, under § 18-1-12, the trial judge may still treat the proceedings as a joint action if such will better promote justice and the dispatch of business. Stollenwerck v. Elmore County, 210 Ala. 489,98 So. 466 (1923); Alabama Power Co. v. *Page 1116 Adams, 191 Ala. 54, 67 So. 838 (1914). See also Rule 20, Alabama Rules of Civil Procedure.
The Alabama legislature has recently enacted the Alabama Eminent Domain Code (AEDC), effective January 1, 1986 and codified at §§ 18-1A-1 to -310, Code of Alabama 1975. The AEDC was modeled after the Uniform Eminent Domain Code (UEDC) which was drafted by the National Conference of Commissioners on Uniform State Laws. Section 1007 of the UEDC specifically adopts the "substantially identical ownership" phraseology. The AEDC, however, does not contain this language in any of its sections. We are thus led to assume that the legislature has intentionally rejected such language as being inconsistent with Alabama law. The pertinent language of § 18-1-12, Code 1975, is specifically retained in the AEDC as § 18-1A-73, Code 1975.
Strict unity of ownership has at least one clear advantage over the other and minority views. The rule provides a "bright-line test" that can be very easily and uniformly applied by trial judges in all cases. The other views necessitate an ad hoc approach to the law. In our review of the existing law, we could find no definitive explanation of what is meant by the phrase "substantial unity of ownership." We do not ascertain any clear way of determining in which cases a court may find that unity of ownership is necessary and in which it is not necessary.
Applying the rule of strict unity of ownership, it is evident that the lots of land in this case constitute distinct and separately owned tracts. Though the current owners of each parcel derived title from a common grantor, the affected parcels are now owned primarily by different persons. As such, the owners' argument that the parcels must be tried as a single unit must fail.
Our decision on the preceding issue removes the need to discuss the argument that all of those holding any interest in any of the five lots were indispensable parties to the proceeding below.
The briefs of counsel indicate that, at the time the current owners obtained title to the five parcels of land, the common grantor reserved along the western border of each parcel a twenty-foot right of way which was to be used jointly so as to benefit all five of the lots. No argument is made that the easements are not appurtenant. The owners argue that all persons holding an interest in this easement should have been joined as necessary and indispensable parties to the proceeding below. This argument must fail.
In 4A Nichols on Eminent Domain, hereinafter referred to as Nichols, it is authoritatively stated:
 "It is well settled that a private easement in real estate is property in the constitutional sense, and may be taken via exercise of the power of eminent domain. When one parcel of land is subject to an easement in favor of another, and the servient tenement is taken for or devoted to a public use which destroys or impairs enjoyment of the easement, the owner of the dominant tenement is entitled to compensation. . . .
 "When the servient tenement is the subject of a condemnation proceeding judicial in character, it has been held that the owner of the dominant tenement is a necessary party. Where, however, the taking of the servient tenement is for a purpose which will not interfere with the exercise of the easement, the owner of the dominant tenement need not be joined."
Nichols § 5.14 (footnotes omitted.)
In the present case, it is obvious that the rights of those owning the dominant tenements of the right of way across Lot B are not obstructed in any way by the condemnation of a small, noncontiguous, portion of Lot B. As such, there has been no taking of the dominant tenement or the easement. See Hooper v.Savannah Memphis R.R., 69 Ala. 529 (1881).
The owners next argue that the trial court erroneously refused to permit them to introduce relevant evidence, which was *Page 1117 
offered to show that the highest and best use of Lot B was in conjunction with Lots A, C, D and E as one single farm unit. The trial court excluded such evidence as too speculative. We find the court to have erred.
When land is taken for the public use, property owners are entitled to receive by way of damages the fair market value of the land taken. Kayo Oil Co. v. State, 340 So.2d 756 (Ala. 1976); Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). The test of the market value of the property is what it would reasonably have sold for in the market at the time and place and under like conditions. Popwell v. Shelby County, 272 Ala. 287, 130 So.2d 170 (1961). In other words, "market value is the price the property will bring when offered for sale by a willing seller who is not forced to sell, and is sought by a willing buyer who is not required to buy, after due consideration of all the elements affecting value." Id. The owner is entitled to consideration for condemnation of his land on the basis of the highest and best use to which the property could be put. Sayers v. City of Mobile, 276 Ala. 589,165 So.2d 371 (1964). Just compensation includes not only the value of the land which is to be taken, but also, the injury resulting to the remaining land of the owner. Jones v. New Orleans Selma R.R. and Immigration Association, 70 Ala. 227 (1881). Where only a part of a tract is taken, the owner is entitled to the difference between the value of the entire tract immediately before the taking and the value of the part remaining after the taking, and the jury should consider such facts and circumstances which would lessen the value of the remaining part in any way. McArdle v. State, 408 So.2d 491
(Ala. 1981); State v. McLemore, 387 So.2d 827 (Ala. 1980). This includes consideration of the use to which the property is adapted or to which it can be reasonably adapted. See State v.Goodwyn, 272 Ala. 618, 133 So.2d 375 (1961). See also UnitedStates ex rel. T.V.A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047,87 L.Ed. 1390 (1943).
It is clear that the highest and best use of a tract of land may be based upon the use of that tract of land "in association with adjacent land held by other owners." See State v. Long,344 So.2d 754 (Ala. 1977). The United States Supreme Court long ago stated:
 "The rule is well settled that, in condemnation cases, the most profitable use to which land can probably be put in the reasonably near future may be shown and considered as bearing upon the market value; and the fact that such use can be made only in connection with other lands does not necessarily exclude it from consideration if the possibility of such connection is reasonably sufficient to affect market value."
McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764,80 L.Ed. 1205 (1936). The only question becomes, whether the showing made in the owners' offer of proof was sufficient to show that "the possibility of combination is reasonably sufficient to affect [the] market value" of Lot B. See State v.Long, supra; United States ex rel. T.V.A. v. Powelson, supra;McCandless v. United States, supra. We find that it was sufficient.
The offer of proof contained allegations that, at the time of the taking, Lot B was being used in conjunction with Lots A, C, D, and E as part of a single farm unit. All five lots, at this time, were leased to a single person, as a farm. At the time, all five lots were being managed by a single person on the owners' behalf. For the forty years prior to the taking, all five lots had been managed by one person. For this same forty years, all five lots had been drained as a single unit. There were then in process plans and procedures for installing a central irrigation system covering substantially the entire five lots. Clearly, this is more than a sufficient showing to establish that the proposed use of Lot B was not merely speculative. As such, the issue as to what effect this use might have on the market value of Lot B became one for the jury to consider when setting just compensation. See Nichols at § 14.26 and authorities cited therein. *Page 1118 
The owners next argue that the trial court committed reversible error by not allowing the introduction of evidence offered to show that the completed highway project would render Lot B unsuitable for a center-pivot irrigation system (C-P system) and thereby decrease the fair market value of Lot B. The owners' argument is based upon a line of Alabama cases, exemplified by State v. Moore, 382 So.2d 543 (Ala. 1980), in which it was stated:
 "In determining the value of the property after the taking, the jury should consider any factor or circumstance which would lessen the value in any way, and this includes the effect that the completed project for which the land is condemned may produce on the remaining tract.
". . . .
 "`The amount of such compensation under the amended section 7489 [now § 18-1-18, Code of Alabama 1975] and damages are measured by the effect of the project as a whole upon the entire tract.'"
The owners' reliance on this line of cases is misplaced.
Under their argument, the owners are asking that the effect of the entire highway project on the five separate tracts of land be used to calculate a diminution in the market value of the remaining portion of Lot B. Such an argument is not in accord with Alabama caselaw.
Though Alabama cases seem to be quite liberal in allowing consideration of the effect of a "completed project" on the value of a tract of land, no case has allowed consideration of the effect of a completed project upon the value of five separate tracts of land. Only the effect a completed project has on the tract of land from which there is a taking has been held admissible. See, e.g., State v. Moore, supra (effect of highway project on single tract used as fast food establishment); Pike County v. Whittington, 263 Ala. 47,81 So.2d 288 (1955) (effect of highway project on single tract used as combination residence, grocery store, and filling station); McRea v. Marion County, 222 Ala. 511, 133 So. 278
(1931) (effect of highway project on single tract used as business property).
Lot B, by the owners' admission, could not be used separately with a C-P system. Though case law allows consideration of the highest and best use to which a property is reasonably adaptable, see, e.g., State v. Goodwyn, supra, Lot B was not reasonably adaptable to the use of a C-P system. It is now and always was impossible to use the C-P system with the single tract, Lot B. The United States Supreme Court stated that just compensation "does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." Campbell v. United States,266 U.S. 368, 45 S.Ct. 115, 69 L.Ed.2d 328 (1924).
The final argument asserted by the owners is that the trial court erred in ruling that the state could acquire a fee simple title in that portion of Lot B that they are seeking to condemn.
In Downing v. State, 214 Ala. 199, 107 So. 80 (1926), our supreme court adopted the following as a correct statement of the law:
 "Whether an eminent domain taking vests an absolute fee is a question concerning which the courts are not in entire accord. In some cases the character of the use seems to be the determining factor; in others, the provisions of the statute under which the taking is made. In some statutes it is expressly provided that the fee shall vest in the taker; in others, provision is made merely for taking and holding for specified public uses. * * * The greater weight of authority, we think, sustains the proposition that unless a legislative intent is discoverable [that] an absolute fee shall vest, the taker takes only an easement, or, at most, a qualified, conditional, and determinable fee. And in such case, if the use be abandoned, the entire title is revested in the owner." (Brackets supplied by Downing court.) *Page 1119 
Later, the court noted that it is not necessary that any technical language be used to vest a fee in the public, as it adopted the following statement:
 "There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient, and a very little more than `take and hold' has been held enough." (Emphasis added.)
Mere "fair implication" affords sufficient and proper basis for the conclusion that the vesting of an unqualified fee is intended. Id.
Section 18-1-1, Code of Alabama 1975, clearly contemplates that the State of Alabama may "take lands" or "acquire an interest or easement therein." Section 18-1-7, Code 1975, uses similar language. Thus, under Downing, we cannot say that such language is not sufficient to allow the state to take a fee simple title by the power of eminent domain. We note that at least one other court has similarly concluded that a fee simple may be taken. See Brooks v. Shepard, 157 F. Supp. 379 (S.D.Ala. 1957). See also State v. Abbott, 476 So.2d 1224 (Ala. 1985) (where the court stated, "An order of condemnation is a transfer of title to land."); Jefferson County v. McClinton,292 Ala. 285, 293 So.2d 294 (1974) (where it was implicitly held that the State could obtain fee simple title by condemnation).
"The right of eminent domain being based upon necessity cannot be any broader than the necessity in the particular case under consideration." Nearhos v. City of Mobile, 257 Ala. 161,57 So.2d 819 (1952).
We consider that Downing and Nearhos stand for the proposition that if the condemnor, proceeding under proper statutory authority, alleges necessity for taking of fee simple title in the property sought to be taken, the court is authorized to grant such taking upon payment of full value established.
In light of the foregoing, we are of the opinion that the trial court has erroneously excluded evidence relevant to a fair determination of the market value of Lot B. This case is affirmed in part, reversed in part, and remanded for a new trial.
AFFIRMED IN PART; REVERSED IN PART; and
REMANDED.
BRADLEY and HOLMES, JJ., concur. *Page 1120 
[EDITORS' NOTE: APPENDIX IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1121