Mississippi State Highway Commission *v.* Ladner

No. 42188          February 12, 1962          137 So. 2d 791

*Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, *Tate Thigpen, G. B. Keaton,* Picayune, for appellant.

140

*Williams & Williams,* Poplarville, for appellees.

JONES, J.

The Mississippi State Highway Commission instituted eminent domain proceedings to secure right-of-way for an interstate highway. The original jury returned a verdict for $15,000; on appeal the circuit court jury found $24,000 as damages, from which judgment the Commission appeals to this Court.

The property was located about a mile, more or less, east of Lumberton, and contained approximately 96 acres. Mr. Ladner was employed as a mail carrier, and made his home on the land. The property did not front on a highway, being some short distance off Highway No. 13, and entered by a gravel driveway.

The Commission sought to condemn 13.48 acres through the property, leaving about 47 acres east of the highway and thirty-odd acres west. The residence and structural improvements were on the 47 acres. Mr. and Mrs. Ladner operated a dairy on the land. They owned 38 head of cattle and were milking 25 cows at the time of the trial. They had two trench silos and a dairy barn with dairy equipment.

We are giving only a brief statement of the facts but believe it sufficient for an understanding of our ruling.

There was a wide variance in the amount of damages as testified by the witnesses. Witnesses for the Commission considered the damages as ranging from $4500 to $9,550; those for the landowners, from $18,400 to $25,000. Mr. Ladner fixed his damages at $24,438; as stated, the verdict was $24,000.

The excessive ideas of the witnesses for the landowners and the landowners, we feel sure, were induced

by certain proof erroneously admitted in evidence, which the court itself stated might be an element of damage, and which was evidently so considered by the jury.

██ █ Testimony as to the present use of the property is admissible insofar as it affects the value of the property. ██ █ Here, however, the evidence was permitted to go further. After showing its use as a dairy farm, in addition to its use as a home for one whose principal occupation was elsewhere, Mr. Ladner, after testifying to the number of cattle owned and the number milking, was asked: "Are you realizing a profit from it?"

Objection was made and overruled; however, when the attorney for the Commission sought to cross-examine on the question of profits, objection was sustained. Then he was asked whether after the taking he would have sufficient pasture to support a dairy. Objection was made and overruled, the court stating: "It may be one of the elements to be considered."

Mr. Ladner was also asked what he would have to do with his dairy cattle after the highway was constructed, and objection was made and overruled. His answer was: "I will have to sell them where I can and for what I can get for them." Objection was made to the answer. The court said, "you have answered you will have to dispose of them and any other statement would not be admissible."

Mrs. Ladner was permitted over objection to show the amount of milk sold per day at the time of trial and the average over the year. She was also permitted, over objection, to show the dairy could not be operated after the taking.

The jury was told by this evidence that a profitable business was being ruined and we are convinced they considered that as an element of damage, when the Commission was not condemning the business or the cows.

In Mississippi State Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250, it was stated:

"Over four objections by appellant's counsel, appellee was permitted to cross-examine appellant's witness Boone concerning the yield and production of income from Rogers' property as an element of valuation. This was manifestly erroneous. Board of Levee Commissioners for Yazoo-Mississippi Delta v. Hendricks, 77 Miss. 483, 27 So. 613. Jahn, Eminent Domain (1953), Section 150, summarizes the rule:

" 'But testimony of profits derived from a business conducted on the condemned property is rejected as inadmissible. The reason for excluding such testimony is that the profits from a business are extremely uncertain, highly speculative, and depend on many contingencies aside from the use to which the land taken is being put. These profits depend a great deal on capital invested, general business conditions, the skill and ability of the proprietor, the manner in which he conducts his business, and many other elements. One man will often succeed where another will fail. Furthermore, neither the business nor its profits are acquired in eminent domain'."

In Mississippi State Highway Commission v. Valentine, 239 Miss. 890, 124 So. 2d 690, this principle was applied to a cattle farm, this Court saying: "Both he and Carter mentioned the size and the good soil, the condition of the land and pasture, its location to towns, schools and roads and the reduction in size of the farm as an operating unit, the difference between a profitable and unprofitable operation. However, the test is the fair market value of the land before and after the taking, and does not include the highly speculative and uncertain profits which may be derived from a business. Mississippi State Highway Commission v. Rogers, 1959, 236 Miss. 800, 112 So. 2d 250; Mississippi State Highway Commission v. Ellzey, 1959, 237 Miss. 345, 114 So. 2d 769." See also Mississippi State Highway Commission v. Windham, et ux., 128 So. 2d 577.

The production of the cows was not a direct product from the land, but even as to direct products, Section 151, Jahr on Eminent Domain (1953), says: ''While the profits from a business conducted on a parcel of real property are excluded from consideration of market value in eminent domain for the reasons above discussed, what about the profits derived from the operations of quarries, mines, or farms? Are they admissible? In these cases, the products proceed directly from the land itself, and these products are actually taken when such land is condemned. Nevertheless, here, too, the majority of the courts have rejected evidence of earnings and profits.''

In 18 Am. Jur., Eminent Domain, Section 259, page 899, the rule is stated as follows: ''It generally has been assumed that injury to a business is not an appropriation of property for which compensation must be made. There are many serious pecuniary injuries which may be inflicted without compensation. It would be impracticable to forbid all laws which might result in such damage, unless they provided a quid pro quo. No doubt a business may be property in a broad sense of the word, and property of great value. It may be assumed that there might be such a taking of it as required compensation. But a business is less tangible in nature and more uncertain in its vicissitudes than the rights which the Constitution undertakes absolutely to protect. The diminution of its value is a vaguer injury than the taking or appropriation with which the Constitution deals. A business might be destroyed by the construction of a more popular street into which travel was diverted, as well as by competition, but there would be as little claim in the one case as in the other. The case stands no differently when the business is destroyed by taking the land on which it was carried on, except so far as it may have enhanced the value of the land. Accordingly, it may be stated as a general rule that injury to

business or loss of profits, or the inconvenience of carrying on business in a new location is not to be considered as an element of damages in eminent domain proceedings in the absence of a statute expressly allowing such damages, even under a constitutional provision allowing just compensation for property taken, injured, or destroyed. . . . .''

The reason of the inadmissibility of evidence of profits is that profits are uncertain and speculative; they depend on too many contingencies, like capital invested, general business conditions, skill and ability of operator, and manner of operation.

■■■ After all, the question to be determined is the before and after market value of the lands and not of the business operated thereon.

Reversed and remanded.

*Lee, P.J.,* and *Gillespie, McElroy* and *Rodgers, JJ.,* concur.