MISSISSIPPI STATE HIGHWAY COMMISSION *v.*
McCARDLE, et al.

No. 42187          February 12, 1962          137 So. 2d 793

*Matthew Harper,* Asst. Atty. Gen., Jackson; *Tate Thigpen, G. B. Keaton,* Picayune, for appellant.

*Williams* & *Williams,* Poplarville, for appellees.

RODGERS, J.

This eminent domain case originated in a Special Court of Eminent Domain of Pearl River County, Mis-

sissippi, upon the application of the Attorney General of Mississippi, in which the State of Mississippi sought to acquire a highway right-of-way across the land of Alvern R. McCardle and wife, Eloise Ladner McCardle. The case was appealed to the Circuit Court from the judgment of the Eminent Domain Court. The trial in the Circuit Court resulted in a verdict and judgment in favor of the landowners in the sum of $9,000, and from that judgment the case has been appealed to this Court.

The appellees own two parcels of land which join at the northeast and southwest corners respectively, in checkerboard fashion. Plot Number Two (or the north plot) is composed of 23.81 acres of rolling land. The east 11.26 acres are cultivable and are used to grow oats and millet. There is one acre in the southwest corner of Plot Two on which tung trees are growing. The balance of the north plot (approximately 11.25 acres) is covered with a growth of young pine timber. The appellees have their home, barn, chicken house, and garden located in a cleared area in the southwest corner of Plot Number One. The balance of Plot Number One is covered with young timber, and a few saw logs located near the north end. There are a total of 23.90 acres in Plot Number One, and the entire parcel is fenced except around the home site. The Highway Department seeks to acquire two and two one hundreths (2.02) acres of land at the point where the two parcels join, so as to take 1.63 acres out of the northwest corner of Plot Number One, and 0.39 acres out of the southeast corner of Plot Number Two. During the trial of the case in the court below, Mr. McCardle was asked the following question: ''Tell the Court and Jury Mr. McCardle, after the proposed interstate highway is constructed and that south half of lot one is separated from the west half of lot five by the proposed highway, what will happen to your stock farm?'' The Highway Department ob-

jected to the evidence "to what will happen to your stock farm", but the court said: "Go ahead." The witness then answered "I will have to sell all my cattle and quit raising calves." The witness was then asked: "I asked what would happen to your stock farm, I mean, Mr. McCardle, whether you can continue to operate it?" The witness then answered "No, sir." The Highway Commission objected "to all these things about what will happen to his stock farm and why he can't operate it and so forth, I object to all that." The court again said: "Go ahead." The witness was then asked: "What is the total market value of your property, Mr. McCardle, before the taking of the right-of-way by the Highway Department?" The attorney for the Highway Commission objected, and the court said: "You mean you object to him telling what it is worth?" The court then overruled the objection and the witness answered: "$21,575." Mrs. Alvern McCardle was introduced and testified about the business of raising calves "on nipple pails of powdered milk", and was asked the question: "Getting back to your land and improved pasture, what will happen to your improved pasture and your small stock farm, after this proposed highway is constructed?" The attorney for the Highway Department objected but the witness answered: "We will have to sell the cows. We can't carry on this program we have." The witness said they raised cattle to sell them, and was then asked: "Have you operated that small stock farm at a profit so far, Mrs. McCardle?" The witness answered "Yes."

Mr. Ott A. Davis, a witness for the defendant, was asked: "Did you in arriving at the reduced value of the property calculate what he will have left east of the proposed highway will be reduced in value? Did you consider that?" The witness answered "Yeah. It knocks him out of being a stock man." Mr. E. F. Loe also testified as follows: "He is operating a small cattle farm there and that will not leave him any cultivated land. I

don't think he would have any use for any cattle on it."

At the end of the testimony, the defendant was granted the statutory instruction, the last clause of which is as follows: "and the court further instructs the jury that the said defendants are entitled to due compensation not only for the value of the property to be actually taken as specified in the application, but also for damages, if any, which may result to them as a consequence of the taking."

██ The attorney for the Highway Commission made motions to exclude the foregoing testimony, but this motion was overruled as well as the motion for a new trial. The Highway Commission claims on appeal to this Court that the admission of this testimony permitted the jury to add the speculative value of the business of cattle raising to the fair market value of the property. This Court has adopted the "fair market value before the taking, less the fair market value immediately after taking" rule as a method of determining the damages to the whole property. Mississippi State Highway Commission v. Hillman, et al., 189 Miss. 850, 198 So. 565; Mississippi State Highway Commission v. Strong, 129 So. 2d 349, (Miss. 1961). ██ The statutory instruction obtained by the defendant in this case submitted to the jury the evidence that defendants would be required to go out of the business of raising cattle for profit.

We have this day decided the case of Mississippi State Highway Commission v. Lennis Edwin Ladner, et ux, No. 42,188, and we have pointed out that under the holding in the case of Board of Levee Commissioners for Yazoo-Mississippi Delta v. Hendricks, et al., 77 Miss. 483, 27 So. 613, that testimony of profits derived from a business conducted on the condemned property is inadmissible. The land in the Ladner case, supra, corners with the property in this case. In addition to the authorities cited in that case, we point out in this

case that this rule is almost universal, that evidence as to destruction of, or loss to, business carried on upon the property sought to be condemned is inadmissible in an eminent domain trial.

In the case of Albert J. Bothwell and the Bothwell Company, a Corporation v. United States, 254 U. S. 231, 65 L. ed. 238, the Court said: "Appellants owned and utilized in their business of stock raising a large tract of land lying in Sweetwater Valley, Wyoming. In June, 1909, much hay was stored upon the land and a thousand head of cattle were there confined. Under the Reclamation Act of June 17, 1902 * * * the United States constructed the Pathfinder Dam. This arrested the flood waters and caused inundation of appellants' lands. The hay was destroyed and it became necessary to remove the animals and sell them at prices below their fair value. * * * But nothing could have been recovered for destruction of business or loss sustained through enforced sale of the cattle. There was no actual taking of these things by the United States, and consequently no basis for an implied promise to make compensation."

In the case of Robert F. Mitchell, et al. v. United States, 267 U. S. 341, 69 L. ed. 644, the Court said: "Among the parcels acquired by eminent domain was one of 440 acres, belonging to the plaintiffs, and used by them in the business of growing and canning corn of a special grade and quality. The establishment of the proving ground resulted in withdrawing from such use the available lands especially adapted to the growing of this particular quality of corn. Plaintiffs were consequently unable to re-establish themselves elsewhere in their former business. * * * Plaintiffs make two contentions. The first is that, because the business is destroyed, they can recover under the 5th Amendment, as for a taking of the business upon a promise implied in fact, under the doctrine of United States v. Great Falls Mfg. Co., 112 U. S. 645, 28 L. Ed. 846 * * * The special

value of land, due to its adaptability for use in a particular business, is an element which the owner of land is entitled, under the 5th Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain. * * * The settled rules of law, however, precluded his (the President) considering in that determination consequential damages for losses to their business, or for its destruction.''

The textwriter Nichols on Eminent Domain in the third edition, Vol. 4, Section 13.3, p. 255, used the following language: ''The case is no different when the business is destroyed by taking the land on which it was conducted. It is well settled that when land occupied for business purposes is taken by eminent domain, the owner or occupant is not entitled to recover compensation for the destruction of his business or the injury thereto by its necessary removal from its established location. Furthermore, as the business is something entirely distinct from the market value of the land upon which it is conducted, it is not considered in determining the value of such land except so far as it illustrates one of the uses to which the land taken may be put.

In the textbook, Orgel on Valuation Under Eminent Domain, p. 353, we find the following language: ''While the courts differ as to the extent to which the 'damaged' clause requires compensation for 'consequential damages' to property, they all agreed that it does not extend to damages to business.'' The business conducted upon land sought to be condemned is generally considered entirely distinct from the market value of the land, and therefore has no determinative influence upon it except insofar as it illustrates one of the uses to which the land may be put. The general rule in most jurisdictions is that such business and the fruits thereof are too uncertain, remote and speculative to be used as the cri-

terion of the market value of the land under which the business is conducted. Theresa B. Joslin v. City of Providence, et al., 114 Atl. 185, 67 L. ed. 1167, 262 U. S. 666; United States v. General Motors Corp., 323 U. S. 373; Caddo Parish School Board v. Willer, 227 La. 201, 78 So. 2d 833; City of St. Louis v. St. Louis, Iron Mountain and Southern Railway Co., et al., 266 Mo. 694, 182 S. W. 750, Anno. Cas. 1918 B, 881.

In the case of City of St. Louis, supra, the Court said: "The rule announced by Mr. Lewis in his excellent work on Eminent Domain is as follows: 'While it is proper to show how the property is used, it is incompetent to go into the profits of the business carried on upon the property. No damages can be allowed for injury to business'."

The fundamental reason for the exclusion of evidence of profits lies in the rule of substantive law that the condemnor takes only the real property, not the business located thereon. See Saur v. Mayor, etc., City of New York, 60 N. Y. S. 648; Nichols, Eminent Domain, Vol. 4, pp. 76-78.

We are of the opinion that this case should be reversed, so that the matter of damages may be submitted to another jury without the introduction of testimony with reference to the loss of business. We do not find it necessary to pass upon the other assignments of error, except to point out that the large judgment in this case indicates that the witnesses for appellees and the jury took into consideration damages over and above the damages allowable under the "before and after" rule above-mentioned.

The judgment of the lower court is therefore reversed and the appellant is granted a new trial.

Reversed and remanded.

*Lee, P. J.,* and *Gillespie, McElroy* and *Jones, JJ.,* concur.