264 So.2d 166

**STATE of Alabama**

v.

**A. D. WOODHAM et al.**

4 Div. 425.

Supreme Court of Alabama.

June 15, 1972.

Ramsey & Johnson, and Richard H. Ramsey, Special Asst. Atty. Gen., Dothan, for appellant.

Alto V. Lee, III, Huey D. McInish, Dothan, for appellees.

**610**

MERRILL, Justice.

This appeal is from a judgment in a highway condemnation proceeding which was appealed to circuit court and resulted in a jury verdict and judgment for $309,000.00. The only material questions presented on appeal are rulings on evidence.

The parties have stipulated and agreed that both parties appealed to the circuit court, and that the only questions to be considered on this appeal are those raised by proper assignments of error relating to the amount of compensation and rulings of the court on evidence pertaining thereto.

A motion for a new trial was overruled and this appeal followed.

The Woodhams, appellees, owned a tract of land on which they operated "Woodham's Foodliner" in Dothan, a super market type grocery store. Originally, the highway curved around the store, but the new design for the highway called for it to be widened and straightened and this would cause it to run through the store building.

There are twenty-two assignments of error and all but two of them relate to rulings on objections to evidence. One group, assignments 1–8, charge error in permitting appellees to show the income of the store for several years, the rent they paid the Woodham family, the gross sales of the business, the fact that the appraiser made an "income study" of the business, the volume of business done, and the introduction of a profit and loss statement showing profits from 1965 to 1969.

These assignments of error are related and raised the question whether in a condemnation proceeding, the property owner may introduce evidence of income, gross sales, volume and profit and loss statements of the business conducted in a building which must be destroyed for the building of a six-lane highway where the building stood.

We have not been cited to nor have we found an Alabama case deciding this exact point. The case of City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237, not mentioned in briefs, cites many authorities where the questions involved here are considered. The only difference in that case and the instant case is that there, a tenant operated the business, while here, some of the owners of the property operated the business. The authorities cited in the *Wilkes* case are to the effect that income from business profits is not admissible in eminent domain proceedings except in those states which, like Florida, have specific statutes which permit consequential damages in some instances. *Wilkes* was tried in the same court that the instant case was heard.

It is well settled that when land occupied for business purposes is taken by eminent domain, the owner or occupant is not entitled to recover compensation for destruction of his business, or the injury thereto by its necessary removal from its established location unless otherwise provided by statute. Furthermore, as the business is something entirely distinct from the market value of the land upon which it is conducted, it is not considered in determining the value of such land, except so far as it illustrates one of the uses to

which the land taken may be part. Nichols on Eminent Domain, Vol. 4, § 13.3. To the same effect is 27 Am.Jur.2d, Eminent Domain, § 275, pp. 83–84; 29A C.J.S. Eminent Domain § 273(3), p. 1198; Jahr, Law of Eminent Domain Valuation and Procedure, § 150, pp. 231–232, Annotation, 16 A. L.R.2d 1113; Mississippi State Highway Commission v. McCardle, 243 Miss. 111, 137 So.2d 793; Mississippi State Highway Commission v. Ladner, 243 Miss. 139, 137 So.2d 791; Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644.

In 2 Orgel On Valuation Under Eminent Domain, 2d Ed., § 246, p. 259, we read:

" * * * In the case of revenue-producing properties, income deserves important consideration, but here the courts make a sharp distinction between income derived from rentals and income derived from business profits. The courts admit the former type of evidence, but they exclude the latter on the ground that what is taken is the real property, not the business, and further, that the income derived from the business is so largely due to the owner's personality and management that it furnishes no satisfactory index or guide to the market value of the property taken. * * * "

■ It is the generally accepted rule that when a piece of land upon which buildings have been erected and affixed to the soil is taken by eminent domain, so far as the buildings add to the market value of the land, that must be considered in determining the compensation to be awarded to the owner. Cumbaa v. Town of Geneva, 235 Ala. 423, 179 So. 227.

■ Under the authorities cited supra, and those in the *Wilkes* case, it is obvious that the trial court erred in failing to sustain objections to those questions which brought income, net profits and prospective loss of profit into the evidence considered by the jury.

The appellees, and evidently the trial court in permitting the evidence to be introduced, relied mainly on the following statement in Alabama Power Co. v. Herzfeld, 216 Ala. 671, 114 So. 49:

"Income is an element of market value. 'The value of property, generally speaking, is determined by its productiveness—the profits which its use brings to the owner.' Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S. Ct. 622, 37 L.Ed. 463. 'The net revenue arising from the use of land may be shown on an issue as to value, although it does not furnish a conclusive test.' 22 Corpus Juris, 181. These questions were proper for the purpose of testing the accuracy of the knowledge of the witness, the reasonableness of his estimate, and the credibility of his testimony. * * * "

We have gone to the original record for a better understanding of the quoted paragraph. The two tracts of land sought to be condemned in *Herzfeld* were parts of agricultural lands which were going to be flooded because of the erection of a dam by the utility. The condemnor sought to show that the lands had not been productive by asking the following questions, and objections to all of them were sustained:

"Q. It hasn't been producing any net income, has it?

"Q. To refresh your recollection, didn't you appear before them in 1917 and 1918 and state to them that that home place was assessed too high, and never had made a profit?

"Q. How much revenue did it produce during those years?

"Q. Do you know what it cost to produce those crops?"

"The value of crops, grass, and trees growing on condemned land may be taken into account in awarding compensation." 29A C.J.S. Eminent Domain § 173; 27

Am.Jur.2d, Eminent Domain, § 279; Wiggins v. Alabama Power Co., 214 Ala. 160, 107 So. 85; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832; Hicks v. United States, 266 F.2d 515, 6th Cir.

While the case of Alabama Power Co. v. Herzfeld, 216 Ala. 671, 114 So. 49, may be indirect authority that income from crops is competent evidence, we think the last sentence of the quoted excerpt from that case shows that it was only intended to hold that the questions to which objections were sustained were "proper for the purpose of testing the accuracy of the knowledge of the witness, the reasonableness of his estimate, and the credibility of his testimony" on cross-examination. We are convinced that the quoted statement does not permit evidence of profits or prospective profits from the operation of a business in a building on condemned land.

One of appellees' witnesses was Albert F. Baretich of Quincy, Florida, who testified as to items of damage and their value. We have already noted that Flroida has a statutory provision which allows evidence not admissible in Alabama and other states without a like statute. For a discussion of the Florida law, see Nichols on Eminent Domain, Vol. 4, § 13.3, pp. 13–154–155, and State Road Dept. v. Abel Investment Co., Fla.App., 165 So.2d 832.

Assignments 9 through 13 relate to rulings of the trial court in overruling objections relating to the value of personal property, mostly fixtures, in the store.

■ The question of compensation for personal property or fixtures in a building on condemned land was settled in City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237, where it was held reversible error when the trial court failed to give condemnor's requested charge No. 5 which charged in part that the jury "should not take into consideration the loss, if any, sustained by defendant Billy Youngue which resulted from the depreciation of the personal property or fixtures owned by him and used by him in the operation of his business on the property leased by him from defendant S. F. Wilkes." The authorities in support of the holding in *Wilkes* are the same we would cite here and will not be repeated. The trial court erred in failing to sustain objections to the questions relating to personal property in the store building.

Assignments of error 15 through 20 charge error in the overruling of objections to certain questions propounded to the witness from Florida. Having already shown reversible error, we will not discuss these assignments because he might not be called as a witness in the next trial.

Assignments 21 and 22 charge error in that the trial court charged the jury that it had permitted certain evidence of income and profits from the property to go to the jury (21) and had allowed testimony to be offered "as to the fixtures or equipment located in that store," (22).

Without deciding whether the exception to the oral charge was sufficient to raise the question, we merely note that the charges were in conflict with what we have held in this opinion and should not have been given.

In brief and oral argument, appellees stressed the fact that their witness, Mark Cannon, "specifically stated that the refrigeration equipment could not be moved and 'they wouldn't be worth [sic] to haul them off.'" But there was no conflict on this point. The State's witnesses as to the damages, John E. Green, a qualified, full time real estate appraiser from Montgomery, and the real estate dealers in Dothan, added the value of the walk-in refrigerators or coolers to their assessment of the damages because they were part of the building; and the Dothan real estate dealers testified that they were told to add the refrigerator equipment to the value of the building when they were making their as-

sessment of the compensation due the owners of the land.

Since the dissenting opinion refers to testimony and matters not included in our original opinion, we now include some comments about them. We omitted reference to them previously because the judgment was being reversed and objectionable or improper evidence could be eliminated in the event of another trial.

As to the first question quoted in the dissent to the appraiser Green, the record shows an objection and the overruling of same before his answer. We have already shown why we think Alabama Power Co. v. Herzfeld, 216 Ala. 671, 114 So. 49, does not apply.

■ The rent on commercial property is a factor to consider in its worth. The dissent states that appraiser Green derived the figure of $23,800.00 as the fair reasonable annual rent. Appellees' evidence showed that their rent for 1967 was $19,575.00, 1968, $22,525.00, and 1969, $24,112.00. Appellees are in the best position to know—they owned the real estate, operated the business and paid the rent to themselves. It appears that appraiser Green's appraisal of the rent was fairly accurate. (By quoting the rent figures given by appellees, we do not hold that the profit and loss statements were admissible, but the amount of rent they paid was competent evidence.)

Referring now to the part of the oral charge quoted in the dissent. Part of the charge is incorrect, but even so, the court later gave an incorrect prejudicial charge which contained no limitation whatsoever. After the trial court had completed its oral charge and just before the given written charges were read to the jury, the record shows:

"(After a brief consultation between the attorneys for the respective parties and the Court, the Court further instructed the jury, as follows:)

"THE COURT: I am going to say this one thing further, that in your deliberations, ladies and gentlemen of the jury, let me state that in the trial of this case, the Court has permitted testimony to be offered as to the fixtures or equipment located in that store, which was allowed to go to you, for your consideration, as to what damages would be occasioned by the destruction of the business there as a market or grocery store, which you could take and consider along with the other testimony in the case, in arriving at the amount of damages and compensation to be allowed."

The statement of the testimony of Archie Woodham about the counters, equipment and gondolas (the frames and containers out on the floor of the supermarket on which groceries are shelved and displayed) is not quite complete. Over objection and motion to exclude, he placed the value of this personal property at $67,265.-02. But on cross-examination, he testified that these items were not custom made, were not bolted to the floor, or attached to anything in the building, that they were removable from the building and were not permanent fixtures to the building.

Mark Cannon, the other witness noted, testified on direct, over objection, that the same equipment described by Archie Woodham was worth $67,200.00. On cross-examination, he stated that he inspected the store about two months after August 27, 1970, "the date of taking the property in issue in this case" according to a stipulation between the parties at the beginning of the trial.

■ The rule of compensation in a condemnation proceeding in this state, where, as here, only a part of the land is taken for highway purposes, is that the owner is entitled to the difference between the value of the entire tract immediately before the taking and the value of the part remaining after the taking, giving effect to any enhancement in value to the part remaining. State v. Huggins, 280 Ala. 538, 196 So.2d

.387; State v. Goodwyn, 272 Ala. 618, 133 So.2d 375, 8A Ala.Dig., Eminent Domain, ☜136.

So, here, we have one of the owners testifying that on the agreed date of the taking of the real property, personal property consisting of counters, stands, etc. were worth $67,265.02, and one of his witnesses testifying that some two months later that same property was worth $67,000.00. While all of this testimony was inadmissible, it is difficult to understand how this valuable personal property should suddenly become valueless or "destroyed" just because the building in which it was situated had been described in an order of condemnation in the probate court.

■■ The power of eminent domain is derived from the sovereignty of the state. The constitutional provisions and the statutes enacted pursuant thereto, requiring the payment of just compensation for the taking of private property for public use, or a limitation on the power, is not a grant thereto. The basic constitutional principle is that there must be an actual taking of property or property rights before compensation is required. Ridings v. State Roads Commission, 249 Md. 395, 240 A.2d 236 (1967).

There is, in this state, no constitutional provision or statute requiring compensation for damages to personal property in a condemnation of realty. Consequential damages to personal property have never been compensable in Alabama. The usual reason stated for the rule is that personalty which is not affixed to realty can be removed by the owner to another place. See Ridings, supra.

Here, it was agreed that the property was and could be taken for a right of way for a state highway. The private property sought to be taken was real estate, a lot on which the store building was located. There was no attempt or application to condemn any personal property. The order of condemnation did not include any personal property.

No section of our State Constitution, and no statutes authorizes the payment for personal property located in a building which is condemned for state highway purposes. "No allowance can be made for personal property, as distinguished from improvements or fixtures, located on the condemned premises." 29A C.J.S. Eminent Domain § 175(1), p. 740. "A taking by eminent domain does not include the personal property lying on the premises taken, but not affixed thereto; and it is held in many cases that damages for injury to such personal property or the expense of removing it from the premises taken are not proper elements of compensation, * * *." 27 Am.Jur.2d, Eminent Domain, § 293, p. 103.

We do not think the case of Futrovsky v. United States, 62 App.D.C. 235, 66 F.2d 215, is apt authority. There is a great deal of difference in the Federal condemnation statutes and our statutes, but regardless of those differences, in *Futrovsky*, the court would not allow compensation for a refrigeration plant whereas we did permit it in the instant case. The court said:

"While the constitutional and statutory law of many of our states makes provision for consequential damage or incidental loss resulting to the citizen upon the taking of his property by eminent domain, there is no such element in federal condemnations.

"Here all that can be taken is the real estate, and all that can be recovered is the reasonable value thereof.

"The inconvenience and expense of removing a going business and its equipment from property so taken cannot be paid for directly, and cannot operate indirectly to change a chattel into real estate."

A comprehensive discussion of the two matters involved in this case, testimony as to profits and the question of compensation for removal of personal property is found in City of St. Louis v. St. Louis, I. M. &

S. Ry. Co., 266 Mo. 694, 182 S.W. 750, which case is cited and followed in City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237. We merely note that the *City of St. Louis* case is three years later than the Missouri case cited in the dissent

We have not found nor have we been cited to any case in Alabama where, in a majority, concurring or dissenting opinion, it has been suggested that compensation was due in eminent domain proceedings, for a proposed state highway for movable, unattached, non-custom-made corporeal personal property in any building, whether it be a dwelling or a store. That is a legislative matter.

This cause was submitted on briefs and was announced March 30, 1972, on the assumption that the request for oral argument had been waived. However, the request had not been waived and appellee was expecting to argue the case orally. On April 3, 1972, submission was set aside, the opinion withdrawn, judgment vacated and it was placed on the oral argument docket. In the original opinion, there were no dissents, but due to the fact that after oral argument there was a dissent, some additions were made to the original opinion.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

COLEMAN, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

HEFLIN, C. J., dissents.

HEFLIN, Chief Justice (dissenting):

John E. Green, a real estate appraiser testifying on behalf of the State, gave his opinion testimony as to the value of the subject property. He expressed an opinion based upon the income approach as well as other approaches. He stated that in connection with the income approach the annual fair rental value of the property is first determined. This is then "computed" into the "indication of value" by applying the proper capitalization. He explained how he derived the figure of $22,800.00 as the fair reasonable annual rent for the property that was condemned. On cross-examination he was asked by the attorney for the appellees the following question:

"Do you consider the operating income, or the income producing from the property a factor that goes into the relative value of the property?"

I consider this question to be proper under the authority of Alabama Power Company v. Herzfeld, 216 Ala. 671, 114 So. 49. This question was on cross-examination and would be admissible for the purpose of testing the accuracy of the knowledge of the witness, the reasonableness of his estimate and the credibility of his testimony.

The witness Green, in response to the above question stated as follows:

"I consider the type of activity being conducted there would certainly have an effect upon the amount of rent which could be paid; we are concerned with the value of the real estate and the amount of rent which it could demand in the market. Certainly the type, its location, the type of business conducted there, and *the amount of profit therefrom could help determine the amount of rent which could be paid.*" (Emphasis supplied)

Under this testimony the appellees had the right to inquire further concerning income and related matters on cross-examination.

After extensive cross-examination, the witness Green admitted he had not ascertained the amount of income from the business. He had used only what he termed "comparable annual rents" in determining what he felt was the fair reasonable annual rent which the property should bring. Thus the appellees had the right to introduce evidence of income from the

business for the limited purpose of showing its influence upon the calculation of the fair reasonable annual rent of the property under the income approach.

It should also be pointed out that the trial court charged the jury, in part, as follows:

"Now, the Court permitted certain testimony to go before you, as to the income produced by this property, or the profits that were being realized from the use of this property. Income is an element of market value; the value of property, generally speaking, is determined by its productiveness; the profits which its use brings to the owner; the net revenue arising from the use of the land may be shown on an issue as to value, although it does not furnish a conclusive test. These questions were allowed to go to you for the purpose of testing the accuracy of the knowledge of the witness or witnesses. The reasonableness of his or their estimates, and the credibility of his or their testimony and *is limited* for that purpose." (Emphasis supplied)

This language basically follows that portion of the *Herzfeld* case set out in the majority opinion. Therefore, under all of the circumstances, I feel that loss of profits was not considered as an element of damages, and the contentions of the appellant are without merit.

One of the appellee owners, Archie Woodham, testified there were display cases, meat cases, produce cases, frozen food cases and gondolas which were particularly adapted to the building upon the land condemned by the State of Alabama and could not be used elsewhere. He also testified that these items of property had no value otherwise.

Mark Cannon, a Superintendent for the Atlantic & Pacific Tea Company testifying as an expert witness for the appellees, stated that the produce counters, meat counters, equipment and gondolas of the appellees could not be salvaged and removed from the building. He further stated that the items of refrigeration equipment could not be moved, and in substance that they wouldn't be worth what it would cost to haul them off if they were removed.

There was conflicting testimony concerning whether these items could be moved and not destroyed. But, in view of the fact that there was conflicting testimony, the jury had the right to determine whether or not these items of property were or were not rendered valueless as a result of the taking. In the case of In re Slum Clearance, City of Detroit, 332 Mich. 485, 52 N.W.2d 195, it was held that an electrolytic plating business whose property was condemned for slum clearance was entitled to recover for chemical solutions necessary to the business which could not be removed from the premises, or the removal of which would be unwarrantedly expensive. See also Futrovsky v. United States, 62 App.D.C. 235, 66 F.2d 215, 216 (1933); Springfield Southwestern Ry. Co. v. Schweitzer, 173 Mo.App. 650, 158 S.W. 1058 and McRea v. Central National Bank of Troy, 66 N.Y. 489.

*Futrovsky,* supra, held that damages were not recoverable pertaining to personal property but the case contained the following statement:

"No evidence was offered to show that the removal of any of these chattels would cause injury either to the real estate or to the chattels, and the only articles which from their description appear to be subject to such injury were the pipes cut to fit the building."

Since there was evidence in this case which supports a jury finding that these items were completely destroyed because of the condemnation, I feel the case of the City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237, is not controlling.

I, therefore, respectfully dissent.