340 So.2d 756 (1976)
KAYO OIL COMPANY
v.
STATE of Alabama.
SC 1733.
Supreme Court of Alabama.
December 10, 1976.
*757 Ronald A. Drummond and Jack Livingston, Scottsboro, for appellant.
J. Allen Lee, Sp. Asst. Atty. Gen., Scottsboro, for appellee.
EMBRY, Justice.
To widen U. S. Highway 72, between Huntsville and Scottsboro, the State of Alabama acquired by eminent domain a portion of the property belonging to appellant, Kayo Oil Company, on which an operating gasoline station was located. In Probate Court damages were assessed at $20,000. Kayo appealed to the Circuit Court of Jackson County where a jury returned a verdict in the amount of $35,000.
On this appeal, Kayo complains of rulings by the trial judge as to the admissibility of certain evidence relating to damages. We reverse.
Kayo is a corporation engaged in the retail distribution of gasoline in Jackson County. The condemned service station was owned by Kayo Oil and fronted on U. S. Highway 72, a well traveled highway, between Scottsboro and Huntsville. The station had been in operation for several years and there was evidence that between 1970 and 1975 the gross sales of the station increased from $321,645 to $435,782. Before the taking, the station contained six gasoline pumps, six 4,000 gallon storage tanks, a service building, lights and various other appurtenances. The date of the taking was May 9, 1975.
Kayo's first assertion of error is the trial court's exclusion of testimony regarding the rental value of the gasoline station based on a system of payment of a fixed rate per gallon of gasoline sold and the number of gallons sold per month at the subject station. This is known as the capitalization of *758 gallonage approach to valuation. It purports to be a reasonable basis for determining the fair market value of land containing a service station. The witness from whom appellant sought to elicit this testimony was Bill Williams, an owner-operator of Williams Brothers Oil Company. Williams had been in the wholesale end of the oil business for 21 years, had operated an oil dealership in Jackson County for 10 years and had been in the business of leasing service station dealerships in that country for 10 years. Out of the presence of the jury, Williams testified that he was familiar with the standards and customs of rental of service stations in Jackson County and it was an accepted standard and practice in the gasoline business to rent service stations on a gallonage basis. That is, rent was arrived at by determining the number of gallons pumped each month at the station and applying a fixed rate per gallon. He testified that one cent per gallon was an accepted standard rate. He further stated that a station which pumped 80,000 gallons of gasoline per month would be a very desirable, profitable stationthe plain inference being that the station in question had been pumping that amount. On this last point the record is not clear.
The trial court refused to allow this testimony before the jury on the ground it is improper to offer evidence of rental value when the property is not rented, but is owned by the operator, as here. The trial court went on to say that the gallonage rate is an improper determinate of the value of the land on which the business is operated. We disagree.
One whose land has been taken under eminent domain is entitled to receive by way of damages the fair market value of the land as of the time of taking. Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). It is proper to consider all facts and circumstances that would go toward establishing a reasonable basis for determining the fair market value of the land taken. If the rental value based on gallonage sold, of land on which a service station is located, is a reasonable basis for determining the fair market value of the land, the evidence of that kind of rental value is admissible.
Whether evidence of rental value of property not rented is admissible in a condemnation proceeding has not previously been decided by this court. It is admissible according to the generally accepted view, with which we agree.
In Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853 (1943), the admission of evidence of rental value based on capitalization of gallonage sold was upheld; in the face of an objection that such evidence allows the amount of compensation to be based on the value of the business conducted on the property rather than the value of the property itself. In Persson, the land in question contained a service station owned and operated by the landowner. Several experts testified that the customary standard in the oil trade was to fix the rental value of the station on the basis of one cent per gallon sold; that, given the gallonage pumped per month, an estimate of the rental value could be made and from these figures the income could be capitalized to show a certain rate of return on an investment of so many dollars in the station. The Persson court stated that "* * * [w]hile the rental value of the property or the income the owner is able to derive from it is not the measure of compensation, it is material, however, in so far as it throws light upon the market value." 13 So.2d at 854.
In St. Louis Housing Authority v. Bainter, 297 S.W.2d 529 (Mo.1957), the court found that the evidence of rental value based on gallonage sold is properly admitted to show the value of the land on which the service station is located. The Missouri court stated that "* * * evidence of gallonage of gasoline sold on the premises is properly admitted for consideration by the jury on the issue of rental value and fair market value of the premises condemned where, by accepted standards and criteria in the trade or business, rentals and values of such property are based thereon. (citations omitted)" 297 S.W.2d at 535. The Bainter court rejected arguments that the *759 gallonage formula did not tend to show fair market value, was highly speculative, and an indirect attempt to get into the question of profits.
Where the rental value of property containing a service station is, according to acceptable standards of the trade, a basis for determining fair market value of the land and improvements and that rental value is established by the use of a formula based on gallonage sold per month, and not on the amount of profits the business might produce, then evidence of the rental value so established is admissible.
Appellant next asserts error in the trial court's exclusion of testimony of the market value of the land, using an income approach to valuation, based on the gross income or gross sales from the business. In this approach, an appraiser takes the gross income a property is producing, deducts expenses, arrives at net income, estimates a "proper capitalization rate" to apply to that income and arrives at a figure which purports to reflect the value of the property. This method attempts to introduce income from business profits into condemnation proceedings and such evidence is clearly inadmissible. State v. Woodham, 288 Ala. 608, 264 So.2d 166 (1972); City of Dothan v. Wilkes, 269 Ala. 444, 114 So.2d 237 (1959). One is not entitled to compensation for loss of business due to the taking of land. Business profits are so remote from the market value of the land on which the business is located, that they are not proper indicia of the value of the land. State v. Woodham, supra.
Finally, appellant contends the trial court erred in refusing to allow cross-examination of the State's witnesses regarding an appraisal of the subject property allegedly made before the taking, which appellant contends would produce a higher figure than an appraisal made after the taking.
Two witnesses employed by the State to appraise the Kayo Oil property estimated its fair market value at $20,326 and $21,880 respectively. Both witnesses based their estimates on views of the property taken in June, 1975, about one month after the actual taking, and after the buildings and improvements were destroyed. They arrived at these figures by determining the difference between the value of the tract before the taking and its value after the taking. Appellant sought to elicit testimony from these witnesses, on cross-examination, that the State had made appraisals before the date of taking and that these appraisals were higher than those made after the taking. The trial court sustained objections to this testimony. Appellant was able to introduce through his own witness an estimate of fair market value of $48,000. This witness viewed the property at the time of taking, estimating its value then at $50,000. From this figure he subtracted $2,000, his estimate of the remaining property's value after the taking.
In a condemnation proceeding, a property owner is entitled to the fair market value of his land, calculated as of the time of taking. Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). Where only a portion of a tract of land is taken, as here, the measure of compensation is the difference in value between the entire tract immediately before the taking and the value of the portion remaining after the taking. Adams v. State, supra.
The State's witnesses used the correct method in arriving at their estimates. This, and the fact that appellant was able to introduce estimates more favorable to himself, leads us to conclude there was no prejudicial error in the trial court's refusal to allow cross-examination of the State's witnesses as to appraisals by the State other than those to which the State testified.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
BLOODWORTH, J., concurs.
HEFLIN, C. J., and JONES and ALMON, JJ., concur specially.
JONES, Justice (concurring specially).
I agree with the opinion of the Court on each point discussed except that portion *760 that deals with the properly owner's right to cross examine the State's witnesses as to other appraisals of value. If I understand the record, the testimony in chief related to a period shortly after the taking. While this did not render their testimony inadmissible, it certainly opened the door for cross examination touching other appraisals made at a time shortly before the taking.
I would reverse and remand on the first point discussed in the opinionthe gallonage formulaand the third pointthe cross examination of the State's witnesses as to prior appraisals.
HEFLIN, C. J., and ALMON, J., concur.