This is an appeal from a judgment in a condemnation proceeding. We affirm.
Charles Waller Advertising, Inc., appellee, owned two parcels of land which abutted Interstate 10 in Mobile County. A billboard owned and maintained by Waller was located on Parcel 1; Parcel 2, situated on the opposite side of Interstate 10, was vacant. In 1976, five years after the billboard was erected on Parcel 1, the State of Alabama, appellant, acquired both parcels by eminent domain. Waller appealed the Probate Court award to the Circuit Court, wherein a jury awarded compensation in the amount of $29,500.00.
The State raises six issues on appeal, four of which relate to the admission of appraisal evidence based upon the income or capitalization approach to valuation. The other issues focus upon an allegedly misleading charge, and the failure to set aside the verdict as excessive and/or grant a new trial.
The State contends evidence of rental income and valuation by the income approach is inadmissible as a matter of law in a condemnation proceeding when the income is generated by a single signboard. We pretermit discussion of this issue. The existence of the income approach as a method of appraising property and the calculations involved in that approach was first injected into the trial during direct examination of the State's expert witness, James Thames:
 Q. All right. Will you tell us briefly the general approaches for the appraisal of real estate in your profession?
 A. Well, the three basic approaches to the evaluation of real estate are the cost approach, which is where the appraiser uses the reproduction costs of the building improvements and depreciates those improvements for whatever age and condition might be at the time of appraisal, and then you add the land value, estimated land value to that figure, and you come up with a total value for the property through the cost approach. The second accepted approach is the market data approach where the [appraiser] goes into the market area, generally the subject property being located within, and you find sales of vacant land or either improved properties, to which you make a comparison to your property that you are appraising, and you make various adjustments to those sales, differences in location, construction quality and features, size of utility, if it's vacant land, and etc., to finally determine what your adjusted value of the subject property would be, based on your analysis of your comparable sales. The third approach we use is the income approach, and this method is used where generally we have income producing properties such as commercial buildings and we take the gross income the property produces and generally we deduct normal allowances for vacancy and credit loss and we come up with what we call effective gross income and from appropriate gross income we normally deduct all items and expenses that are necessary to the operation of the *Page 39 
real estate, in order to arrive at what we call net income, and the net income figure is what we use to capitalize by a sufficient rate to determine what the overall value of the property would be through the income approach.
After reviewing the two alternate methods of valuation and the results reached thereby, counsel for the State returned to the income approach:
 Q. Now, Mr. Thames, did you arrive at an opinion of a fair market value of the property under an income approach here?
A. I did.
 Q. In your opinion did it fairly demonstrate the fair market value of the subject property?
A. I think it did.
Q. The income approach?
A. Yes, sir.
This testimony was developed a few moments later:
 Q. All right, . . . Mr. Thames, will you tell us how you approached and analyzed the income approach?
 A. Well, based upon my readings of [a publication promulgated by the American Institute of Real Estate Appraisers], normally, outdoor advertising signs are not bought and sold on an individual basis. They are generally bought and sold on their total income productivity from the whole operation of the company, and in doing that they have found in the market within larger metropolitan areas other than this area, that outdoor advertising sign companies have sold on what they call a gross income multiplier of one and a half to three times their gross collectible income. So, what I generally did was, I just took the income estimated on this particular sign board, which was $300.00 a month, and deducted a normal figure for vacancy and credit loss of fifteen percent to arrive at an effective gross income in the amount of $3,060.00, and —
THE COURT: $3,060.00?
A. Yes, sir.
Mr. Thames detailed this analysis at the request of the trial judge:
 WITNESS: All right, sir. O.K. I estimated the monthly rent to be $300.00, and then times twelve months would be an annual income of $3,600.00, of which I deducted 15% for vacancy and credit loss, to arrive at a net effective gross income of $3,060.00, and then I used a multiplier of two times the effective gross income to arrive at a value through the income approach in the amount of $6,100.00.
The attorney for the State continued:
 Q. Well, now, so you did apply the multiplier to an individual sign board?
A. Yes.
 Q. I had understood you to say that that isn't done. That individual signs are not bought and sold.
A. They are not normally done that way, no sir.
 Q. In your opinion, is the income approach followed by you a reliable approach in this case?
A. No, sir.
Q. And tell us why?
 A. Well, I have no basis to judge what the — judge expenses primarily. I had no way to allocate expenses necessary to the operation of this individual sign. And number two, I had no basis for arriving at a — appropriate capitalization rate to apply to the net income to arrive at the value through the income approach. Because these signs are not bought and sold on an individual basis on the open market. They are not mortgaged. You can't borrow money against them, and so I couldn't — I really couldn't derive an effective rate to apply to the net income, and foremost, I couldn't judge what expenses would be — could be accurately ascertain[ed] to this particular individual sign board without knowing what the total expenses of the whole *Page 40 
operation of this particular company would be.
 THE COURT: And the number of sign boards they have.
 THE WITNESS: Yes, sir. It would be very speculative on my part to try to determine that.
[BY THE ATTORNEY FOR THE STATE]:
 Q. So, you consider the income approach to be an unreliable approach in this case?
A. Yes, sir.
Direct examination of the State's second expert witness yielded the same opinion, i.e., that the income approach to valuation is not applicable to an individual billboard.
During direct examination of Charles Waller, the president of Waller Advertising, Waller's attorney proffered into evidence a copy of the contract between Waller Advertising and the company which contracted to have its advertisement displayed on Waller's billboard. Counsel for the State objected on the ground that the contract and the terms contained therein would have relevance only to appraisal under the income approach, which he contended was "inapplicable, and irrelevant." This objection, as well as an objection to the admission of an exhibit (Exhibit F) which set forth the computations and results reached under the income approach, was overruled by the trial judge. An objection to a similar chart (Exhibit E) offered during direct examination of another expert witness, Mr. Courtney, was also overruled. Testimony concerning the computations on the chart followed its admission:
 Q. Okay. Would you explain to the ladies and gentlemen of the Jury, your computations as shown by the exhibit?
 A. Yes, sir. The sign board was earning $300.00 a month, that's $3,600.00 a year. I used a loss of rent and vacancy of two percent. I understand from Mr. Waller that the sign board had never been vacant, but I still think you ought to use some type of vacancy ratio which was — gives us a net rent less before expenses of $3528.00. I used the management fee of $176.00; Taxes — $20.00, which is what the taxes are. Utilities — that's the lights, the sign board runs about $96.00; Maintenance, which I got from Mr. Waller, and also checked out with Lamar Advertising, said this is about right on this type of sign of $180.00. This gives the total expenses of $472.00. This gives a net rent of $3,056.00, and that particular time I thought it a capitalization rate of ten percent was what the market indicated; capitalized that then percent into $3,056.00, gives a total value of $30,560.00 for the property or rounded off to $30,600.00.
The foregoing excerpts from the record make clear that the State first introduced evidence of both the income approach to valuation and the rental income generated by the property. Even if this evidence were inadmissible, the State cannot be heard to complain of its admission in this case. Peterson v.Jefferson County, 372 So.2d 839 (Ala. 1979); State Farm Mut.Auto. Ins. Co. v. Boyer, 357 So.2d 958 (Ala. 1978); SoutheastContractors, Inc v. H. R. Construction Co., 284 Ala. 712,228 So.2d 463 (1969). The State is not free to introduce evidence of a method of valuation, follow that with expert testimony that the theory is inappropriate to the facts at hand, and then object when Waller offers identical evidence in an attempt to show that the approach to valuation is in fact a proper method of calculating or establishing the property's fair market value. The fact that the State's expert opined that the income approach was unreliable in this circumstance because certain information was unavailable to him in no way forecloses Waller's right to controvert that opinion by other expert testimony showing that the necessary information was available and that the approach, utilizing that information, was reliable.
The State argues that the admission of Exhibits E and F was in error because they were "secondary evidence . . ., merely *Page 41 
cumulative and clearly serving to unfairly emphasize, but not add to, the witnesses' testimony . . . [and which] should have been excluded even if evidence of the [income approach] were properly admissible." Because counsel for the State did not raise this specific objection at trial, but instead objected that the exhibits were relevant only to the income approach which he contended was inadmissible, the State is deemed to have waived this objection and cannot predicate error upon the specific ground raised for the first time on appeal. Mahone v.Birmingham Electric Company, 261 Ala. 132, 73 So.2d 378 (1954);C.P. Robbins Associates v. Stevens, 53 Ala. App. 432,301 So.2d 196 (1974); Alabama Casket Company v. Castleberry,47 Ala. App. 117, 251 So.2d 372 (1971). See also Rule 46, ARCP; Gamble, McElroy's Alabama Evidence § 426.01 (11) (3rd Ed. 1977).
The correctness of the jury charge is questioned in the State's statement of issues. Although not developed in brief, the record indicates counsel for the State objected to both the oral and written charges. Specifically, objections were raised to the instruction that the jury could consider the income approach as well as rental income generated by the property when determining its fair market value. The Defendant's written charge to which counsel objected provided:
 Ladies and Gentlemen of the Jury, the Court charges you that to determine the just compensation to be paid to the landowners for the property described in the Petition to Condemn, that you must determine the fair market value of the defendant's property as of the date of the taking, that is, November 12, 1976. In making such determination you may consider all of the evidence presented including any rent being paid to the landowner for the commercial use of the property being taken, so far as such rental income contributes to the market value of the landowner's property.
The State objected to the following instructions in the trial judge's oral charge.
 [Y]ou are entitled to consider in arriving at what the fair and reasonable market value of that property was on November 12, 1976, . . . that a piece of property that's bringing in an X amount of dollars in rent per year is certainly more valuable than a piece of property that's not bringing in anything. . . .
Without deciding whether evidence of the income approach is properly admissible, we find no error in this aspect of the charge. The rule is that, while evidence of the property's rental value may be in certain circumstances admissible in a condemnation proceeding, evidence of the profits derived from the business conducted on the property is not. State v.Woodham, 288 Ala. 608, 264 So.2d 166 (1972). The trial judge went to great lengths to make this point clear to the jury.
 I want to make it clear to you, and it may be hard and difficult for you to separate some of the figures that you have heard here today, from what I'm telling you the law is, but the law in Alabama is clear that the owner of personal property being taken is not entitled to compensation for the loss of business. He's not entitled to compensation for loss of profits. The law in Alabama just strictly says that you can't award compensation for that and you can see the reason for that because a business that's profitable today might not be profitable tomorrow. A business that's operated by one person at a profit might with another person go broke in the same location. So, that's the law. You might ask yourself, Well, Judge, if that's true then why did you let these people come in here and testify as to the rental value of this sign and how much Mr. — uh — the Wallers were making from this sign. For this purpose, the law says that they are entitled to the fair and reasonable market value of their property at the time it was taken. And I say, as Judge, that to arrive at the fair and reasonable market value of those two pieces of property, you've got a right to consider the rental value or what income those pieces of property had, but don't get in your mind *Page 42 
that you are under any obligation because I'm telling you that the law is exactly opposite, that you can't go back there and say, now, the Wallers, we've got to give them the compensation for the business they lost, and for the profits they lost, when this property is taken, because that's not the law, but you are entitled to consider in arriving at what the fair and reasonable market value of that property was on November 12, 1976, you're entitled to consider that a piece of property that's bringing in an X amount of dollars in rent per year is certainly more valuable than a piece of property that's not bringing in anything, and that's the reason that evidence was let in for you to consider.
The State also objected to the giving of Defendant's Written Charge Number Eight because the charge did not instruct the jury that the most profitable use of the property was limited to legal use. This objection stemmed from the fact that the Waller's billboard was located within 660 feet of Interstate 10 and thus did not conform to the requirements of the Highway Beautification Act. Code 1975, § 23-1-270, et seq. When counsel for the State raised this objection, the trial judge overruled and informed the parties that he would orally instruct the jury to limit its consideration to the legal use of the property. The State contends that although the judge's oral charge was correct, error was restored when the judge read the faulty written charge to the jury.
We disagree. The charge of which the State complains was as follows:
 Ladies and gentlemen of the jury I charge you that real estate tends to gravitate toward the highest, best and most profitable use to which it may be put and its value tends to be set by the most profitable use to which the property will be put in the reasonable near future.
The trial judge clearly instructed the jury, during this oral charge the day before the written charges were given, that their consideration was limited to the legal use of the property.
 I charge you that the rule that you can consider the value of the subject property for its highest and best use, contemplated a lawful use, not one prohibited by law, such as zoning regulations, or restrictive covenants. It would be improper to arrive at the market value of subject property based entirely on a prohibited or illegal use.
This charge was reinforced when, the next day, the judge prefaced the giving of the written charges by stating:
 As I told you yesterday, ladies and gentlemen of the jury, I'm going to give you now some written instructions which are to be presented along with the oral charge of the Court I gave you yesterday afternoon. Understand that these written instructions are not in contradiction of anything that I've already told you, but they may explain more fully some of the things I've told you and I give them for the reason that they are correct statements of the law and they may be a value to you along with what I told you orally in . . . deliberating on and deciding this case.
Viewed in the worst possible light, these instructions have only a tendency to mislead — not necessarily mislead — and, thus, do not constitute reversible error. Humphrey v. Boschung,47 Ala. App. 310, 253 So.2d 760, affirmed 287 Ala. 600,253 So.2d 769 (1970); Russell v. Thomas, 278 Ala. 400,178 So.2d 556 (1965); Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306 (1963); Mahone v. Birmingham ElectricCompany, 261 Ala. 132, 73 So.2d 378 (1954).
Finally, the State contends the trial judge erred by refusing to set aside the verdict as excessive and/or grant a new trial. Again, we must disagree. The property taken by the State was unique; there was expert testimony that the highest and best use of the property — if not its only use — was limited to commercial outdoor advertising. The jury had the benefit of hearing the testimony and appraisals of several expert witnesses in addition to the landowner's valuation of the property. They were apprised of the various methods *Page 43 
of valuation, the flaws of each, and the results reached under the different approaches. The appraisal testimony ranged from a low of $5,200.00, to a high of $115,740.00 given by Waller. We cannot say, under these circumstances, that the award of $29,500.00 was excessive, nor can the trial judge be put in error for refusing to set aside such an award.
For the foregoing reasons, the judgment appealed from is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.